UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| *In re Welspun Litigation* | Consolidated Case No. 16-cv-6792 (RJS)<br><br>ECF Case<br><br>Class Action |

**THE ABBOTT AND AASGAARD PLAINTIFFS' REPLY IN SUPPORT OF THE JOINT APPLICATION OF HAGENS BERMAN AND STECKLER GRESHAM COCHRAN LLC TO BE APPOINTED INTERIM CO-LEAD COUNSEL**

The Abbott and Aasgaard Plaintiffs file this reply to support the Joint Application of Hagens Berman and Steckler Gresham Cochran PLLC to Be Appointed Interim Co-Lead Counsel.

The voluminous briefing on this issue sets forth the qualifications and depth of experience of Hagens Berman and Steckler Gresham Cochran PLLC ("Proposed Interim Co-Lead Counsel") and evidences why they would best serve this complex consumer class action as co-lead counsel. Proposed Interim Co-Lead Counsel initiated the litigation, has led the investigation and development of substantial evidence to support this case, and are the most qualified firms to lead this case based on their experience in securing billions for class members in consumer cases across the country and leading similar teams to obtain such results. Not only have Proposed Interim Co-Lead Counsel demonstrated in hundreds of cases they can efficiently manage a consolidated case for the benefit of the class, the proposed leadership team represents cooperation by every Plaintiff and attorney who sued Welspun, except Bursor & Fisher.

Bursor & Fisher's opposition to Proposed Interim Co-Lead Counsel's leadership structure is not in the best interests of the class and is unsupported by

the record. The firm's primary argument is the proposed structure is "bloated and unnecessary." Mot. at 1. But the structure was acceptable to Bursor & Fisher until the other firms refused to guarantee it 25% of any recovery regardless of the amount of work performed or how that work benefitted the class. Indeed, the firm initially agreed Hagens Berman and Steckler Gresham Cochran PLLC should lead this case. Only after all counsel refused to acquiesce to Bursor & Fisher's unreasonable demands, did Bursor & Fisher suddenly find the structure offensive. This admission establishes the structure is efficient and will put the putative class on equal footing as Defendants. But even if Bursor & Fisher were "adequate" to lead this case, the Federal Rules require courts to appoint the "applicant best able to represent the interests of the class" if "more than one adequate applicant seeks appointment." *See* FED. R. CIV. P. 23(g)(2). Here, the best choice to lead the case is Proposed Interim Co-Lead Counsel.

### A. Bursor & Fisher's proposal to serve as sole interim class counsel does not promote efficiency or transparency in serving the best interests of the class.

Although Bursor & Fisher attempts to characterize this case as simple, it is not. This case involves the consolidation of multiple cases filed by class representatives from numerous states under the laws of various states, includes a foreign defendant, and may ultimately involve numerous sophisticated and well-capitalized nationwide retailers represented by skilled defense attorneys.

Contrary to Bursor & Fisher's claims that the proposed leadership structure is bloated and unnecessary, a co-lead structure with a small PEC is an efficient way to litigate this complex case. The proposed leadership structure ensures the class will always have enough time, money, personnel, and experience to litigate against an international corporation, and other multi-billion dollar retailers who may join

the suit as defendants. In contrast, Busor & Fisher only has 14 attorneys and many "successes" it touts are cases where it has yet to prevail or be paid. *See, e.g.*, *In re: Cellphone Termination Fee Cases*, 2015 WL 3750142, at *1 (Cal. Ct. App. June 16, 2015; *Hendricks v. Starkist Co.*, et al., No. 13-cv-00729-HSG, 2016 WL 692739 (N.D. Cal. Feb. 19, 2016).[1] Nor has the firm shown it has the necessary resources to litigate a case of this magnitude without the resources of the other attorneys with whom the firm has refused to work without guarantees each will give Bursor & Fisher 25% of any recovery.

And, although Bursor & Fisher argue there is no need for multiple firms to serve as class counsel, the structure incorporating co-lead counsel with a small PEC promotes efficiency and fosters transparency among counsel. The Abbott and Aasgaard Plaintiffs have agreed to submit periodic fee and cost reports to lead counsel to ensure only necessary expenditures are incurred by the class. Proposed Interim Co-Lead Counsel's structure also gives lead counsel discretion to assign and distribute work equitably in a manner that benefits the class. In previous cases, counsel has also implemented restrictions and guidelines to ensure efficient

---

[1] Bursor and Fisher also overstate their trial prowess. Dkt. 34 at (claiming five multi-million dollar class verdicts or recoveries since 2008). In *Ayyad v. Sprint Spectrum*, for example, the firm obtained zero damages for the class because the jury found a set-off for defendant that far exceeded class damages. *See In re: Cellphone Termination Fee Cases*, 193 Cal.App.4th 298, 122 Cal.Rptr.3d 726 (App. 2011). Later, the trial court vacated the jury's set-off decision; but a successful appeal ensued resulting in a re-trial to determine the amount of set off. During pre-trial proceedings Bursor & Fisher failed to properly disclose an expert witness, and was precluded from fully offering his testimony at trial. *In re: Cellphone Termination Fee Cases*, 2015 WL 3750142, at *3 (Cal. Ct. App. July 16, 2015). Following the second trial, the setoff was determined to be less than damages incurred by the class, but the court concluded it was error to have permitted Bursor & Fisher to get around its disclosure failure by reading previous trial testimony to the jury. *Id*. at *7. Consequently, the trial court granted Sprint's motion for new trial on lost profits, which dwarfed the verdict initially, an approach recently affirmed by the court of appeals. *Id*. at *20.

prosecution and will do so here. Further, an executive committee will ensure that any unique interests or positions that arise, including new defendants or state-specific interests, can be represented by the appointment of experienced and knowledgeable counsel. The executive committee can also help lead counsel identify such issues without fear lead counsel will withhold work or otherwise not include them in the litigation, and all counsel to the proposed leadership structure have successfully worked together in the past to achieve outstanding results for the class. Bursor & Fisher, on the other hand, would have this Court grant it *carte blanche* to distribute work without input from any other party and with a demonstrated inability to work cooperatively with Proposed Interim Co-Lead Counsel and members of the PEC.

The proposed multi-counsel structure also allows for costs to be shared equally, which is a fair way to manage a complex case and ensures the class(es) will have the financial resources to prosecute this case creatively and aggressively. As to any argument by Bursor & Fisher that it is a more cost-efficient choice because it has a New York office, so too does Hagens Berman and, in any event, dealings with Bursor & Fisher suggest this case is being staffed from California. Carey Decl. at ¶ 3. Counsel can also appear telephonically when appropriate and given that discovery will occur all over the country (perhaps all over the globe), travel to New York will be a minor expense borne initially by counsel on behalf of the class. Further, no reasonable consumer would, as Bursor & Fischer suggest, select their counsel based on the transportation costs to and from the courthouse. Such a metric does not determine what is in the best interests of the class and is most certainly not justification to appoint Bursor & Fisher as sole class counsel to the exclusion of the pooled expertise, resources, and experience of multiple firms.

To better understand the efficiency of the two proposals, one need only look two recent recoveries previously cited by each movant: *In re Hyundai and Kia Fuel*

*Economy Litig.*, MDL 13-2424 (C.D. Cal.) and *Hendricks v. Starkist Co.*, et al., No. 13-cv-00729-HSG, 2016 WL 692739 (N.D. Cal. Feb. 19, 2016). In *Starkist*, Bursor & Fisher recovered $12 million for approximately 2.4 million claimants resulting in payments of approximately $1.97 in cash or $4.43 in vouchers. *Id.* at *5. Bursor & Fisher accumulated a lodestar of $1,344,720 and sought a fee award of $4,000,000, a 2.53 multiplier. *Id.* at *10-11. The firm also sought costs of $155,779.96, including hotel stays at the Four Seasons, private car-service charges, first class air-travel, and dinners when attorneys and staff worked late or on the weekends, none of which would be permitted under protocols developed by Proposed Interim Co-Lead Counsel in other cases.[2] *Id.*; *see also* Carey Decl. ¶ 2. The court awarded less than requested, approximately $3.6 million in fees and all costs. *Id.* at *16.

In contrast, Hagens Berman and PEC member McCune Wright recovered $400 million in benefits for the class, $97 million of which was paid in monetary benefits to hundreds of thousands of class members in *Hyundai/KIA*, including lump-sum payments averaging $353 for Hyundai drivers, $667 for Kia drivers, and as high as $715 for Hyundai owners and $1420 for Kia owners. Carey Decl. ¶ 4. Under the terms negotiated by Hagens Berman and McCune Wright, payments were the same regardless of the total number of claims and regardless of any award of attorneys' fees.[3] *Id.* For its work, Hagens Berman and McCune Wright were awarded $5.55 million in fees and $343,550 in costs. Carey Decl. ¶ 5. And although the request for costs is sealed, a copy of Hagens Berman Travel Policy (precluding stays at hotels like the Four Seasons, excessively priced air-fare, expensive meals,

---

[2] https://www.tunalawsuit.com/Documents/Bursor%20Declaration.pdf, Declaration of Scott A. Bursor in Support of Plaintiff's Motion for an Award of Attorneys' Fees, Costs and Expenses, and Inventive Awards for the Class Representative and Interested Parties, at 86-91 (last visited Dec. 27, 2016).

[3] https://www.hyundaimpgclasssettlement.com/

and private car transportation) is attached as Exhibit A to the Carey Declaration. Notably, Hyundai/Kia involved global discovery, including depositions in Korea and voluminous discovery, including non-English ESI. Thus, for a substantially lower percentage of fees and costs when measured against the class recovery, Hagens Berman was able to litigate a complex nationwide class action in multiple countries against two of the largest automobile manufacturers in the world, and recover exponentially more for the class and individual claimants. Some of this can be attributed to the claims made in Hyundia/Kia versus those in Sunkist, but the comparison illustrates that Proposed Interim-Lead Counsel can more efficiently litigate, with similar or superior outcomes, complex nation-wide class actions against multi-national corporations than Bursor & Fisher.

B. **The ability to work cooperatively with other counsel is a necessary trait of lead class counsel.**

This case demands a team of experienced attorneys who can work together cooperatively and efficiently and in the best interests of the class. Proposed Interim Co-Lead Counsel devoted significant time and effort successfully developing a leadership consensus among Plaintiffs' counsel before seeking court intervention and approval. Bursor & Fisher's withdrawal of its support of Hagens Berman and Steckler Gresham Cochran PLLC as co-lead counsel *only after* all other Plaintiffs refused to guarantee Bursor & Fisher 25% of the recovery notwithstanding the work performed or how that work benefitted the class is unreasonable. Dividing any fee award pro rata based on work performed for the benefit of the class—as all other Plaintiffs have agreed—is equitable and in the best interests of the class. Bursor & Fisher's withdrawal of its support of the co-lead counsel structure illustrates Bursor & Fisher's inability to work cooperatively with other counsel to act in the best interests of the class.

The proposed co-lead structure is fair and creates a legal team that has demonstrated that it can work together cooperatively and without rancor. Simply put, the proposed structure can obtain the best result for the class. Despite Bursor & Fisher's refusal to participate on the terms agreed to by the other Plaintiffs, Bursor & Fisher will still be available to be called upon when needed to assist in litigating the consolidated action and Bursor & Fisher will be compensated in a manner consistent with the benefits conferred to the class.

## CONCLUSION

For these reasons, the Abbott and Aasgaard Plaintiffs respectfully request the Court grant the Joint Application of Hagens Berman and Steckler Gresham Cochran PLLC to Be Appointed Interim Co-Lead Counsel and appoint Hagens Berman and Steckler Gresham Cochran PLLC as co-lead counsel for the putative class, and McCune Wright LLP and The Paytner Law Firm as members of the PEC.

Dated: December 28, 2016.	Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By:  *s/ Robert B. Carey*

Robert B. Carey *(pro hac vice)*
Leonard W. Aragon *(pro hac vice)*
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
rob@hbsslaw.com
leonard@hbsslaw.com

Jason A. Zweig
555 Fifth Avenue, Suite 1700
New York, NY 10017
Telephone: (212) 752-5455
Facsimile: (212) 210-3980
jasonz@hbsslaw.com

Stuart M. Paynter *(pro hac vice* pending)
THE PAYNTER LAW FIRM PLLC
1200 G. Street NW, Suite 800
Washington, D.C. 20005
Telephone: (202) 626-4486
Facsimile: (866) 734-0622
stuart@paynterlawfirm.com

*Attorneys for Plaintiff Meghan Abbot*

MCCUNEWRIGHT, LLP
Joseph G. Sauder
Matthew D. Schelkopf
Joseph B. Kenney
555 Lancaster Ave
Berwyn, Pennsylvania 19312
Telephone: (610) 200-0580
jgs@mccunewright.com
mds@mccunewright.com
jbk@mccunewright.com

*Attorneys for Plaintiff Ursula Keep*

## CERTIFICATE OF SERVICE

I certify that on December 28, 2016, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I certify that I have mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

        *s/ Robert B. Carey*
        ROBERT B. CAREY