May 4, 2018

**By ECF and Email**
The Honorable Richard J. Sullivan
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007
sullivannysdchambers@nysd.uscourts.gov

Re: Discovery dispute in *In re Welspun Litigation*, Case No. 16 Civ. 6792 (RJS)

Dear Judge Sullivan:

I.     <u>Plaintiffs' Portion</u>

    A.     **Factual Overview and Request for Relief**

In August 2016, Defendant Welspun admitted it supplied fake Egyptian cotton sheets, but claimed the problem was an unintentional mistake. At the time, however, the Wall Street Journal reported rumors that a Walmart employee warned Defendant Walmart in 2008 that Welspun was engaged in textile fraud.[1] Those rumors were correct. Plaintiffs recently learned that in 2008, Walmart hired a company called Grand ISS to investigate the allegations. There is evidence that the investigation: (1) exposed systematic fraud by Welspun using counterfeit customs stamps and false paperwork; (2) identified responsible Welspun employees; and (3) identified where Welspun actually sourced its cotton. Walmart first failed to disclose Grand ISS in interrogatory responses, and then made unsupported assertions of privilege concerning documents. Plaintiffs therefore ask the Court to compel Walmart to produce all documents concerning its 2008 investigation, including documents and communications exchanged with Grand ISS.

The facts uncovered in the 2008 investigation are relevant for purposes of scienter, impeachment and identifying knowledgeable witnesses. The events in 2008 also are relevant because evidence obtained from other defendants show that the fraud continued through 2016. In early January 2016, a whistleblower contacted Target saying Welspun had asked him or her to falsify invoices to make it appear that Welspun used Egyptian cotton when it did not.[2] An Egyptian cotton vendor later confirmed that Welspun passed-off a forged invoice purporting to show Welspun had purchased cotton from that vendor. Target remained in contact with the whistleblower for at least seven months. The whistleblower disclosed that Welspun did not purchase enough Egyptian cotton to meet the needs of its retailers, had a history of falsifying invoices, and implicated other U.S. retailers who sold Welspun-made Egyptian cotton sheets.

Later, another Welspun employee (not the whistleblower) told a Target employee in India that Welspun used non-Egyptian cotton for Target's products. The same Target employee then

---

[1] August 25, 2016, Wall Street Journal, "Wal-Mart in 2008 Looked Into Authenticity of Cotton Sheets Supplied by Welspun India."

[2] The whistleblower is referenced here has "him or her" because, according to Target, he/she expressed fear of personal harm or retribution if he/she is identified. The Court recently ordered that the whistleblower's name may be designated "Counsel's Eyes Only." *See* Dkt. No. 150.

stole a trove of incriminating documents from the Welspun employee's laptop, and passed them on to other Target employees.  When Target disclosed to Welspun India's CEO Dipali Goenka what it had learned, she privately did not deny the fraud, but publicly misrepresented to consumers, retailers, and investors that the cotton substitution was an innocent mistake, and could have happened to any textile company.[3]

### B.    Plaintiffs' Discovery Requests and Walmart's Responses

Plaintiffs served interrogatories requiring Walmart to identify all persons who (1) conducted any investigation into Welspun; (2) provided any information in response to any investigation of Welspun or (3) told Walmart that its Welspun-made sheets were made with non-Egyptian cotton.  Walmart never disclosed Grand ISS in its original or amended interrogatory responses.  *See* Ex. A (Walmart's Original and Amended Responses to Rog Nos. 1-2, 21).

Plaintiffs' RFP No. 43 requires Walmart to produce all "documents and communications concerning warnings by any of your employees or agents in 2008 that Welspun might have been selling [Walmart] fake Egyptian cotton bed sheets, as reported in the Wall Street Journal on August 25, 2016."  *See* Ex. B.  Walmart first refused to produce anything, objecting on the basis of relevance, but not privilege.  *Id.*  Walmart later agreed to produce documents, but claimed it was unlikely to have many to produce.  By April 13, 2018, Walmart produced only eight emails from 2008, several of which were heavily redacted even where no attorneys were on the emails.

The few emails Walmart produced confirm that a Walmart employee in India raised the alarm about Welspun in 2008.  He also expressed concern that Walmart employees may have been colluding with Welspun.  Walmart produced no documents shedding light on what Walmart's investigation uncovered, or why Walmart continued to sell Welspun-made products.  Notably, former Walmart executive Ken Senser apparently played a lead role in the 2008 investigation of Welspun.  He was later linked to a 2014 scandal over Walmart's cover-up of a vast bribery scheme in Mexico, culminating in Walmart reserving $283 million dollars to settle claims by the U.S. Department of Justice for violations of the Foreign Corrupt Practices Act.[4]

On April 24, 2018, Plaintiffs' counsel asked why Walmart only produced eight emails concerning the 2008 investigation.  Walmart's counsel then disclosed that Walmart withheld additional, unspecified documents based on privilege, and that the privilege log did not properly disclose that fact.  Walmart had lumped Grand ISS and other 2008 documents in a single privilege log entry for 375 documents, and misidentified them as 2016 documents.  Walmart also claimed in the same privilege log entry that the attorney-client and/or work product privileges applied to communications between Walmart and Welspun.  *See* Ex. C.  Contrary to Local Rule 26.2(b), Walmart served the privilege log roughly six months after Walmart's written response to RFP 43, which contained no privilege objection to that specific request.  *See* Ex. B.

### C.    Argument

Walmart has no legal and factual basis to withhold the documents.  First, "the party invoking a privilege bears the [heavy] burden of establishing its applicability" with respect to each document.  *In re Grand Jury Subpoenas Dated March 19, 2002 and August 2, 2002,* 318

---

[3] Forbes India, May 12, 2017, "Welspun India: Out of the woods."  http://www.forbesindia.com/article/8th-anniversary-special/welspun-india-out-of-the-woods/46931/1

[4] April 21, 2012, The New York Times, "Wal-Mart Hushed Up a Vast Mexican Bribery Case"; Nov. 16, 2017, Law.com, "Wal-Mart Reserves $238 Million to Settle Mexico FCPA Case.

F.3d 379, 384 (2d Cir. 2003).  "[B]lanket or categorical claims of privilege" are prohibited. *Samad Bros., Inc. v. Bokara Rug Co. Inc.*, 2010 WL 5094344, at *2 (S.D.N.Y. Nov. 30, 2010). Here, Walmart first tried to evade its burden by not disclosing Grand ISS's investigation, then by withholding documents based on blanket, unsupported assertions of privilege.  Under the facts here, the Court should hold that Walmart waived any privilege.  *See Calabro v. Stone*, 225 F.R.D. 96, 98 (E.D.N.Y. 2004) ("defendant has waived his right to claim that any such document is privileged in light of his apparent failure to disclose the existence of the information in a privilege log or otherwise to raise the issue earlier").

Second, Walmart has no legal basis to assert work-product privilege over documents and communications exchanged with Grand ISS.  This Court already addressed a similar issue last year when it denied Target's motion to quash a subpoena seeking test results from a laboratory that tested Egyptian cotton sheets sold by Target.  As the Court held, for the work product privilege to apply, the material must be "prepared in anticipation of litigation," and "the mere fact that [an issue] might result in litigation is insufficient to trigger work-product protection." Oct. 31, 2017 Order, p. 3, 5 (Dkt. No. 130).  "If a document is prepared in the ordinary course of business or if it would have been created in essentially similar form irrespective of the litigation, then it does not qualify for protection under Rule 26(b)(3)."  *Id.* at 4 (internal quotation omitted). The Court concluded that even if there was a threat of litigation, Target's testing of sheets served the business purpose of determining whether the sheets were made of something other than Egyptian cotton.  *Id.* at 6.  That reasoning applies with even greater force here because Walmart faced no litigation in 2008 over its Egyptian cotton sheets.  Nor can Walmart argue that it had no business interest in determining the accuracy of its Egyptian cotton sheet labeling in 2008.

Third, the attorney-client privilege applies only where (1) there is "a communication between client and counsel" and (2) the communication is made "for the purpose of obtaining or providing legal advice."  *Durling v. Papa John's International, Inc.*, 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018).  Even if an attorney is involved in a communication, the privilege does not extend to "economic, business or policy advice."  *Id.*  Neither element is satisfied with respect to communications with Grand ISS or Welspun.  Walmart also redacted internal emails were no attorneys were present, and thus there is no "communication between client and counsel."  In the few emails that do include attorneys, Walmart has not shown that the communications were for legal advice rather than business advice.[5]

Fourth, as for documents exchanged with Grand ISS, "there is no private-investigator's privilege."  *Chevron Corp. v. Donziger*, 2013 WL 1896932, at *2 (S.D.N.Y. May 7, 2013) (internal quotation omitted); *Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 981 F. Supp. 2d 1207, 1209 (N.D. Fla. 2013) ("The common law has never recognized a private investigator's privilege. Nor should it").  In any event, Walmart never asserted such a privilege.

## II.  **Defendant Walmart's Portion**

Plaintiffs resort to misrepresentations about Walmart and irrelevant allegations about Target to sensationalize a routine instance of attorney work product: an investigation into allegations of wrongdoing conducted at the request and under the direction of in-house counsel by internal and external investigators.  Litigation about this matter was a distinct possibility, as this action demonstrates.  As Plaintiffs know from Walmart's document production, in June

---

[5] Walmart redacted emails where Walmart non-attorney personnel Ken Senser, Gary Hill, Joe Lewis, Tony Migliaccio, Steve Dozier, William Hamlett, James Beck and/or Ashish Bharara are the only people included.

2008, Walmart received an email from an employee alleging that certain Welspun sheets may not have been 100% Egyptian cotton as they were labeled. In response, Walmart's in-house counsel immediately became involved, and directed an investigation subject to the attorney work product doctrine (there were also privileged communications regarding the investigation). As Plaintiffs also know from disclosures by Walmart, Walmart retained Grand ISS, an outside investigations firm, to assist with the investigation. Plaintiffs engage in baseless speculation about what this privileged and work product investigation might have concluded.

Plaintiffs failed to meet and confer with Walmart, ignoring Section 2.G of the Court's Rules and Practices. While counsel discussed on April 24, 2018 the scope of Plaintiffs' 30(b)(6) deposition notice and touched on the 2008 investigation and whether related documents were included on Walmart's privilege log, Plaintiffs failed to meet and confer on the issues raised by their portion of this letter. Further, Walmart is providing today a revised privilege log that breaks out the documents relating to the 2008 investigation and corrects the technical error that led to incorrect dates being listed for certain documents. If Plaintiffs had met and conferred, there would have been no need for this application.

### A.  Walmart's Discovery Responses Are Appropriate

Plaintiffs state that they served an interrogatory requiring the identification of individuals involved in the 2008 investigation. Not so. Plaintiffs' interrogatories were limited to "information concerning products sold in the United States during the CLASS PERIOD," defined as "*the period from January 1, 2012 to the present*." The 2008 investigation is not within that time period. Further, of course, there is no prejudice because Walmart notified Plaintiffs that Grand ISS was involved in the investigation.

Second, with regard to RFP No. 43, Plaintiffs omit that Walmart's responses and objections objected to the extent that it sought "documents that are subject to the attorney-client privilege [and/or] the attorney work product privilege." Walmart also objected to the scope but agreed to meet and confer. During those conversations, Walmart explained that it would review the relevant documents, but that very few non-privileged documents likely existed.

Third, with regard to Walmart's privilege log, Plaintiffs omit that Walmart agreed to provide a revised privilege log by today that addressed a technical issue where documents from 2008 were listed but did not have the correct dates (the original log did include Bates numbers for redacted documents; those documents bore their correct dates). Walmart's revised log will also list the documents from the 2008 investigation in a separate category, addressing Plaintiffs' concern that categories were "lumped" together. And Walmart has made clear that it is not asserting attorney-client privilege or work product over communications between Walmart and Welspun at the time of the 2008 investigation.

### B. The Investigation Is Protected By The Attorney Work Product Doctrine[6]

Plaintiffs are as loose with the law as they are with the facts. Plaintiffs' first argument that Walmart waived its privilege and work product objections by not providing a document-by-

---

[6] Although Plaintiffs purportedly seek "all documents" concerning the 2008 investigation, including those authored or received by Walmart's in-house counsel (and thus covered by the attorney-client privilege), they offer no basis for invading Walmart's attorney-client privilege. Plaintiffs only offer substantive argument regarding documents and communications with Grand ISS. Those documents are protected by the attorney work product doctrine, rather than the attorney-client privilege, and thus Walmart focuses on those documents here.

document privilege log is contrary to S.D.N.Y. Local Rule 26.2(c).  That Rule states that for privilege assertions for multiple documents "it is presumptively proper to provide the information required by this rule by group or category" and that "[a] party receiving a privilege log that groups documents or otherwise departs from a document-by-document or communication-by-communication listing may not object solely on that basis."  Walmart's categorical privilege log is consistent with the Local Rules, and there has been no waiver.

Plaintiffs' second, third, and fourth arguments amount to one: that the attorney work product doctrine does not protect documents and communications exchanged with Grand ISS.  In support of this assertion, Plaintiffs erroneously characterize Grand ISS as a private investigator hired to investigate only business risk, rather than what it was: an agent of Walmart assisting in an attorney work product investigation into serious allegations with potential for litigation.[7]

Here, there is no dispute that the documents at issue were prepared by or for Walmart; the only question is whether they were prepared in anticipation of litigation such that they "can fairly be said to have been prepared or obtained *because of* the prospect of litigation."  *U.S. v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (citations omitted).  As the Court is well aware, attorney work product is protected from discovery even if the materials prepared by or at the direction of counsel "are also intended to assist in business dealings."  *Schaeffler v. U.S.*, 806 F.3d 34, 43 (2d Cir. 2015).  And factual reports developed in a work product investigation, including the work of "investigators seeking factual information," are also protected.  *In re Grand Jury Subpoena dated October 22, 2001*, 282 F.3d 156, 161 (2d Cir. 2002).

In June 2008, Walmart received a complaint from an employee (a day before that employee left the company) questioning whether certain bed sheets sourced from Welspun and labeled 100% Egyptian cotton may not in fact have been 100% Egyptian cotton.  In response to this complaint and in light of the significant potential litigation risk associated with its allegations, Walmart immediately commenced an investigation.  That investigation was directed by Walmart in-house counsel precisely because of the litigation risk.  The scope and form of the investigation was different because of potential litigation, in contrast to how Walmart handled contemporaneous investigations that involved business or ethical issues less likely to result in lawsuits.  Indeed, the use of an outside investigations firm was unusual for Walmart at the time, and Grand ISS was hired because of the potential litigation risk posed by the matter.

The documents created as part of this work product investigation reflect concerns regarding litigation risk and a concerted effort to determine the underlying facts: the information necessary to evaluate that risk.  Thus, the documents at issue are not merely test results or clinical studies prepared in the ordinary course of business, as in this Court's prior decision in this action regarding the Applied DNA testing requested by Target.  Dkt. No. 130; *see also Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 334, 337 (S.D.N.Y. 2008) (Sullivan, J.) (holding that clinical studies undifferentiated in form or content from "routine clinical studies that were to be used for commercial purposes" were not attorney work product).  Instead, this was a confidential investigation conducted under the direction of Walmart's in-house counsel and in-house investigations team, akin to other investigations for which work product protection has been upheld.  *See S.E.C. v. Chakrapani*, No. 09 Civ. 325(RJS), 2010 WL 2605819, *8-9

---

[7] Plaintiffs' arguments regarding a "private investigator's privilege" are makeweight – Walmart never asserted such a privilege and is not relying on it now.

(S.D.N.Y. June 29, 2010) (Sullivan, J.) (upholding work product protection for emails between SEC staff members regarding investigation into potential wrongdoing).

Since receiving Plaintiffs' draft pre-conference letter, Walmart has discussed these facts with Plaintiffs' counsel in an effort to avoid this unnecessary discovery dispute, but Plaintiffs' counsel was unwilling to engage in a meaningful meet-and-confer, choosing instead to pursue Court intervention.  Walmart has a declaration from the lawyer who oversaw the investigation (a former Walmart employee) but is not submitting it now because of the limitation in Section 2.G of the Court's Rules.  Walmart will, of course, provide that Declaration to the Court and counsel if the Court so wishes.  Walmart is also willing to provide the withheld materials to the Court for *in camera* review.  Walmart respectfully submits that its privilege and work product objections should be sustained.

Respectfully submitted,

COHEN & GRESSER LLP

By: __/s/____Nathaniel P. T. Read_____

Mark S. Cohen
Nathaniel P. T. Read
800 Third Avenue
New York, New York 10022
Telephone: (212) 957-7600
Facsimile: (212) 957-4514
mcohen@cohengresser.com
nread@cohengresser.com

*Attorneys for Defendant*
*Wal-Mart Stores, Inc.*

BURSOR & FISHER, P.A.

By: ___/s/____Joel D. Smith_____

Scott A. Bursor
Joseph I. Marchese
Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
scott@bursor.com
jmarchese@bursor.com
fklorczyk@bursor.com

Joel D. Smith (admitted *pro hac vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail:  jsmith@bursor.com

*Interim Class Counsel*

cc:       All counsel of record (via ECF and email)

6

**PLAINTIFFS' EXHIBIT A**

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

————————————————————— x
:
*In re Welspun Litigation*            :            Case No. 1:16-cv-06792-RJS
:
————————————————————— x

**WALMART'S RESPONSES AND OBJECTIONS**
**TO PLAINTIFF HAROLD BROWER'S**
**FIRST SET OF INTERROGATORIES TO WALMART**

Pursuant to Federal Rules of Civil Procedure 33 and the Local Rules of the United States

District Court for the Southern District of New York, Defendant Wal-Mart Stores, Inc.

("Walmart"), by its undersigned counsel, hereby objects and responds to Plaintiff Harold

Brower's First Set of Interrogatories to Walmart, including the Definitions contained therein,

dated May 19, 2017 (collectively, the "Interrogatories," and each an "Interrogatory"), as follows:

**OBJECTIONS TO PLAINTIFF'S INTERROGATORIES,**
**INSTRUCTIONS, AND DEFINITIONS**

1.      Walmart objects to the Interrogatories to the extent that they seek information that

is beyond the scope of the mediation scheduled to take place in this litigation (the "Mediation"),

and that the parties have agreed to limit discover at this point to information regarding the

amount and existence of any purported damages.

2.      Walmart objects to the Interrogatories as overbroad and unduly burdensome

where the Interrogatories purport to demand the identification of "all PERSONS."  Walmart will

provide responses to the Interrogatories based on information available after a reasonably

diligent search, taking into account the burden of searching "all PERSONS" at Walmart in

advance of the Mediation to determine who may have information responsive to the

Interrogatories.  The responses provided to the Interrogatories identify persons known to

products that were marketed or labeled as "100% Egyptian Cotton," "100% Long-Staple

Egyptian Cotton," or "100% Premium Egyptian Cotton" that were sold by Walmart.

     5.     Walmart objects to Definition No. 9, *i.e.* the term "ORDINARY COTTON

PRODUCTS," as vague, ambiguous, overly broad, unduly burdensome, or not relevant to any

party's claims or defenses to the extent that the term defined therein would include products

other than Subject Products.

     6.     Walmart objects to Definition No. 11, *i.e.* the terms "YOU" and "YOUR," as

vague, ambiguous, overly broad, unduly burdensome, or not relevant to any party's claims or

defenses and will construe all Interrogatories herein to call for the production of documents in

the possession, custody and control of Walmart.

## INTERROGATORIES

### INTERROGATORY NO. 1:

     INDENTIFY all PERSONS who conducted, managed or oversaw any audit or investigation related to the CHALLENGED PRODUCTS or EGYPTIAN COTTON PRODUCTS, including but not limited to any audit of YOUR's or WELSPUN's supply chain or the cotton content of linens.

### RESPONSE TO INTERROGATORY NO. 1:

     Walmart objects that this Interrogatory is beyond the scope of the Mediation.  Subject to

its objections, Walmart responds that Walmart counsel directed that Amber Roe (Director,

Global Investigations) conduct a privileged investigation regarding the Challenged Products.

### INTERROGATORY NO. 2:

     IDENTIFY all PERSONS who provided information in response to any audit or investigation related to the CHALLENGED PRODUCTS or EGYPTIAN COTTON PRODUCTS, including but not limited to any audit of YOUR's or WELSPUN's supply chain or the cotton content of linens.

**RESPONSE TO INTERROGATORY NO. 2:**

Walmart objects that this Interrogatory is beyond the scope of the Mediation.  Subject to its objections, Walmart responds that Julie Raider (Senior Manager 2, Sourcing, Home) and Krista O'Connor Trost (Senior Buyer, Bedding) provided information in response to the investigation regarding the Challenged Products.

**INTERROGATORY NO. 3:**

IDENTIFY all PERSONS with knowledge of YOUR or WELSPUN's supply chain for the CHALLENGED PRODUCTS, EGYPTIAN COTTON PRODUCTS, or ORDINARY COTTON PRODUCTS manufactured or sold by you.

**RESPONSE TO INTERROGATORY NO. 3:**

Walmart objects that this Interrogatory is beyond the scope of the Mediation.  Subject to its objections, Walmart responds that Julie Raider (Senior Manager 2, Sourcing, Home) and Krista O'Connor Trost (Senior Buyer, Bedding) have knowledge of Walmart's supply chain for the Challenged Products.

**INTERROGATORY NO. 4:**

IDENTIFY all PERSONS with knowledge of the labeling, packaging, marketing, promoting, and/or advertising of the CHALLENGED PRODUCTS, EGYPTIAN COTTON PRODUCTS, or ORDINARY COTTON PRODUCTS manufactured or sold by YOU.

**RESPONSE TO INTERROGATORY NO. 4:**

Walmart objects that this Interrogatory is beyond the scope of the Mediation.  Subject to its objections, Walmart responds that Julie Raider (Senior Manager 2, Sourcing, Home) and Krista O'Connor Trost (Senior Buyer, Bedding) have knowledge of the labeling, packaging, marketing, promoting, and/or advertising of the Challenged Products.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
:
*In re Welspun Litigation*                     :          Case No. 1:16-cv-06792-RJS
:
———————————————————— x

**WALMART'S AMENDED RESPONSES AND OBJECTIONS
TO PLAINTIFF HAROLD BROWER'S
<u>FIRST SET OF INTERROGATORIES TO WALMART</u>**

Pursuant to Federal Rules of Civil Procedure 33 and the Local Rules of the United States

District Court for the Southern District of New York, Defendant Wal-Mart Stores, Inc.

("Walmart"), by its undersigned counsel, hereby provides these Amended Responses and

Objections to Plaintiff Harold Brower's First Set of Interrogatories to Walmart, including the

Definitions contained therein, dated May 19, 2017 (collectively, the "Interrogatories," and each

an "Interrogatory"), as follows:

**<u>OBJECTIONS TO PLAINTIFF'S INTERROGATORIES,
INSTRUCTIONS, AND DEFINITIONS</u>**

1.       Walmart objects to the Interrogatories to the extent that they seek information that

is beyond the scope of the mediation scheduled to take place in this litigation (the "Mediation"),

and that the parties have agreed to limit discover at this point to information regarding the

amount and existence of any purported damages.

2.       Walmart objects to the Interrogatories as overbroad and unduly burdensome

where the Interrogatories purport to demand the identification of "all PERSONS." Walmart will

provide responses to the Interrogatories based on information available after a reasonably

diligent search, taking into account the burden of searching "all PERSONS" at Walmart in

advance of the Mediation to determine who may have information responsive to the

definition as the term "CHALLENGED PRODUCTS," *i.e.*, to refer to Welspun bed linen products that were marketed or labeled as "100% Egyptian Cotton," "100% Long-Staple Egyptian Cotton," or "100% Premium Egyptian Cotton" that were sold by Walmart.

5.      Walmart objects to Definition No. 9, *i.e.* the term "ORDINARY COTTON PRODUCTS," as vague, ambiguous, overly broad, unduly burdensome, or not relevant to any party's claims or defenses to the extent that the term defined therein would include products other than Subject Products.

6.      Walmart objects to Definition No. 11, *i.e.* the terms "YOU" and "YOUR," as vague, ambiguous, overly broad, unduly burdensome, or not relevant to any party's claims or defenses and will construe all Interrogatories herein to call for the production of documents in the possession, custody and control of Walmart.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

INDENTIFY all PERSONS who conducted, managed or oversaw any audit or investigation related to the CHALLENGED PRODUCTS or EGYPTIAN COTTON PRODUCTS, including but not limited to any audit of YOUR's or WELSPUN's supply chain or the cotton content of linens.

**RESPONSE TO INTERROGATORY NO. 1:**

Walmart objects that this Interrogatory is beyond the scope of the Mediation.  Subject to its objections, Walmart responds that Walmart counsel directed that Amber Roe (Director, Global Investigations) conduct a privileged investigation regarding the Challenged Products.

**INTERROGATORY NO. 2:**

IDENTIFY all PERSONS who provided information in response to any audit or investigation related to the CHALLENGED PRODUCTS or EGYPTIAN COTTON PRODUCTS, including but not limited to any audit of YOUR's or WELSPUN's supply chain or the cotton content of linens.

**RESPONSE TO INTERROGATORY NO. 2:**

Walmart objects that this Interrogatory is beyond the scope of the Mediation.  Subject to

its objections, Walmart responds that Julie Raider (Senior Manager 2, Sourcing, Home) and

Krista O'Connor Trost (Senior Buyer, Bedding), among others, provided information in

response to the investigation regarding the Challenged Products.

**INTERROGATORY NO. 3:**

IDENTIFY all PERSONS with knowledge of YOUR or WELSPUN's supply chain for
the CHALLENGED PRODUCTS, EGYPTIAN COTTON PRODUCTS, or ORDINARY
COTTON PRODUCTS manufactured or sold by you.

**RESPONSE TO INTERROGATORY NO. 3:**

Walmart objects that this Interrogatory is beyond the scope of the Mediation.  Subject to

its objections, Walmart responds that Julie Raider (Senior Manager 2, Sourcing, Home),  Krista

O'Connor Trost (Senior Buyer, Bedding), and Puneet Arora (Director, Global Sourcing) have

knowledge of Walmart's supply chain for the Challenged Products.

**INTERROGATORY NO. 4:**

IDENTIFY all PERSONS with knowledge of the labeling, packaging, marketing,
promoting, and/or advertising of the CHALLENGED PRODUCTS, EGYPTIAN COTTON
PRODUCTS, or ORDINARY COTTON PRODUCTS manufactured or sold by YOU.

**RESPONSE TO INTERROGATORY NO. 4:**

Walmart objects that this Interrogatory is beyond the scope of the Mediation.  Subject to

its objections, Walmart responds that Julie Raider (Senior Manager 2, Sourcing, Home), Krista

O'Connor Trost (Senior Buyer, Bedding), and Puneet Arora (Director, Global Sourcing)  have

knowledge of the labeling, packaging, marketing, promoting, and/or advertising of the

Challenged Products.

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

—————————————————————— x
                                 :

*In re Welspun Litigation*          :      Case No. 1:16-cv-06792-RJS
                                 :
—————————————————————— x

### WALMART'S AMENDED RESPONSES AND OBJECTIONS
### TO PLAINTIFF HAROLD BROWER'S
### <u>SECOND SET OF INTERROGATORIES</u>

Pursuant to Federal Rules of Civil Procedure 33 and the Local Rules of the United States District Court for the Southern District of New York, Defendant Wal-Mart Stores, Inc. ("Walmart"), by its undersigned counsel, hereby provides these Amended Responses and Objections to Plaintiff Harold Brower's Second Set of Interrogatories to Walmart, including the Definitions contained therein, dated August 21, 2017 (collectively, the "Interrogatories," and each an "Interrogatory"), as follows:

### <u>OBJECTIONS TO PLAINTIFF'S INTERROGATORIES,</u>
### <u>INSTRUCTIONS, AND DEFINITIONS</u>

1.      Walmart objects to the Interrogatories to the extent that they are beyond the scope permitted by Rule 33.3 of the Local Rules of the U.S. District Court for the Southern District of New York, which, in relevant part, limits interrogatories served at the commencement of discovery to those seeking the identification of witnesses or basic information regarding the existence and location of documents.

2.      Walmart objects to the Interrogatories to the extent that they seek information that is not relevant to whether the Court should certify a class ("Class Discovery").  To the extent the Interrogatories seek information beyond the scope of Class Discovery, they are not appropriate

**INTERROGATORY NO. 20:**

IDENTIFY by brand, product type, article number, SKU, BATCH NUMBER(S), LOT NUMBER(S), and any other available descriptor each CHALLENGED PRODUCT that any other PERSON (other than Plaintiffs) told YOU contained ORDINARY COTTON.

**RESPONSE TO INTERROGATORY NO. 20:**

Walmart objects to this Interrogatory as beyond the scope permitted by Rule 33.3 of the

Local Rules of the U.S. District Court for the Southern District of New York.  Walmart also

objects that this Interrogatory is beyond the scope of Class Discovery.  Walmart also objects to

this Interrogatory on the grounds that it is overbroad and unduly burdensome, as it seeks to

require Walmart to provide information regarding the content of every single statement by

every single person who may have made a particular statement to anyone who worked at

Walmart during the period of January 1, 2012 to the present. Subject to its objections, Walmart

responds that it is not aware of any individual who told any Walmart associate responsible for

the sourcing, quality control, or purchasing of the Challenged Products that any of those

Products contained Ordinary Cotton.

**INTERROGATORY NO. 21:**

IDENTIFY all PERSONS (other than Plaintiffs) who told YOU that any CHALLENGED PRODUCT contained ORDINARY COTTON.

**RESPONSE TO INTERROGATORY NO. 21:**

Walmart objects that this Interrogatory is beyond the scope of Class Discovery.

Walmart also objects that this Interrogatory constitutes an improper contention interrogatory.

Walmart also objects to this Interrogatory on the grounds that it is overbroad and unduly

burdensome, as it seeks to require Walmart to provide information regarding the content of

every single statement by every single person who may have made a particular statement to

anyone who worked at Walmart during the period of January 1, 2012 to the present.  Subject to

its objections, Walmart responds that it is not aware of any individual who told any Walmart

associate responsible for the sourcing, quality control, or purchasing of the Challenged

Products that any of those Products contained Ordinary Cotton.

Dated:  New York, New York
        December 1, 2017

Mark S. Cohen
Nathaniel P. T. Read
COHEN & GRESSER LLP
800 Third Avenue, 21st Floor
New York, New York 10022
Telephone: (212) 957-7600
mcohen@cohengresser.com
nread@cohengresser.com

*Attorneys for Defendant*
*Wal-Mart Stores, Inc.*

**PLAINTIFFS' EXHIBIT B**

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x
                                   :

*In re Welspun Litigation*           :       Case No. 1:16-cv-06792-RJS

                                   :

——————————————————————— x

## WALMART'S RESPONSES AND OBJECTIONS
## TO PLAINTIFFS' SECOND SET OF REQUESTS
## FOR PRODUCTION OF DOCUMENTS TO WALMART

Pursuant to Federal Rules of Civil Procedure 26 and 34 and the Joint Local Rules of the United States District Courts for the Southern District of New York, Defendant Wal-Mart Stores, Inc. ("Walmart"), by its undersigned counsel, hereby objects and responds to Plaintiffs' Second Set of Requests for Production of Documents to Wal-Mart Stores, Inc., including the Definitions contained therein, dated August 21, 2017 (collectively, the "Requests", and each a "Request"), as follows:

## OBJECTIONS TO PLAINTIFFS' REQUESTS,
## INSTRUCTIONS, AND DEFINITIONS

1.       Walmart objects to the Requests to the extent that they seek documents that are not relevant to whether the Court should certify a class ("Class Discovery").  To the extent the Requests seek information beyond the scope of Class Discovery, they are not appropriate until after Class Discovery is complete,  the Court has adjudicated the class certification issue, and the parties have proceeded to discovery on the merits of Plaintiffs' claims (*i.e.*, after the "Class Certification Phase").

2.       Walmart objects to the Requests as overbroad and unduly burdensome to the extent that the Requests purport to demand "[a]ll DOCUMENTS and COMMUNICATIONS"

Products, the amounts refunded or otherwise credited, and the press releases and other

notifications of the Recall of Challenged Products.

**REQUEST FOR PRODUCTION NO. 40:**

     All DOCUMENTS and COMMUNICATIONS CONCERNING returns of
CHALLENGED PRODUCTS from YOU to WELSPUN during the CLASS PERIOD.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 40:**

     Subject to its objections, Walmart will produce responsive, non-privileged documents, if

any, located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 41:**

     All DOCUMENTS and COMMUNICATIONS CONCERNING any refunds for
CHALLENGED PRODUCTS that YOU received from WELSPUN during the CLASS PERIOD,
and the reasons for such refunds.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 41:**

     Subject to its objections, Walmart will produce responsive, non-privileged documents, if

any, located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 42:**

     DOCUMENTS sufficient to show, on a SKU by SKU basis, all refunds for
CHALLENGED PRODUCTS that YOU received from WELSPUN during the CLASS PERIOD,
and the reasons for such refunds.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 42:**

     Subject to its objections, Walmart will produce responsive, non-privileged documents, if

any, located after a reasonable search.

**REQUEST FOR PRODUCTION NO. 43:**

     All DOCUMENTS and COMMUNICATIONS CONCERNING warnings by any of
YOUR employees or agents in 2008 that WELSPUN "might have been selling [YOU] fake
Egyptian cotton bed sheets," as reported in the Wall Street Journal on August 25, 2016 (see
https://www.wsj.com/articles/wal-mart-in-2008-looked-into-authenticity-of-cotton-
sheetssupplied-by-welspun-india-1472160712).

**RESPONSE TO REQUEST FOR PRODUCTION NO. 43:**

Walmart objects to this Request as beyond the scope of Class Discovery because it seeks documents relevant only to the merits of this action and not touching on matters relevant to class certification; as a result, Walmart will not search for and produce responsive documents, if any, at this time.  In the event that additional discovery is necessary after the Class Certification Phase, Walmart agrees that it will meet and confer on this Request.

**REQUEST FOR PRODUCTION NO. 44:**

All DOCUMENTS and COMMUNICATIONS CONCERNING any warning, alert, criticism, or complaint related to any RELEVANT THIRD PARTY involved in the manufacture of the CHALLENGED PRODUCTS or supply of EGYTPIAN COTTON.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 44:**

Walmart objects to this Request as beyond the scope of Class Discovery because it seeks documents relevant only to the merits of this action and not touching on matters relevant to class certification; as a result, Walmart will not search for and produce responsive documents, if any, at this time.  In the event that additional discovery is necessary after the Class Certification Phase, Walmart agrees that it will meet and confer on this Request.

**REQUEST FOR PRODUCTION NO. 45:**

All DOCUMENTS and COMMUNICATIONS CONCERNING consumer complaints about CHALLENGED PRODUCTS YOU sold during the CLASS PERIOD, including but not limited to the number and nature of the complaints, YOUR policies for responding to complaints, the complaints themselves, and any summary or analysis of consumer complaints.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 45:**

Walmart objects to this Request as beyond the scope of Class Discovery because it seeks documents relevant only to the merits of this action and not touching on matters relevant to class certification; as a result, Walmart will not search for and produce responsive documents, if any, at this time.  In the event that additional discovery is necessary after the Class Certification Phase, Walmart agrees that it will meet and confer on this Request.

**PLAINTIFFS' EXHIBIT C**

| Date Range | Document Type | Sender(s) | Recipient(s) | Copyee(s) | Privilege | Privilege Justification | Category Description | Number of Documents Being Redacted/Withheld | Beginning Bates Stamp of Documents Redacted |
|---|---|---|---|---|---|---|---|---|---|
| 08/25/2016 - 12/15/2016 | MSG PDF XLSX DOCX CSV JPG | **Attorneys:** A. O'Shea, Esq. (Walmart); A. Klestoff (ZG); E. Smith, Esq. (Walmart); J. Snell, Esq. (Walmart); L. Bechet, Esq. (Walmart); S. Hardin, Esq. (Walmart); T. Mars, Esq. (Walmart); M. Singer, Esq. (Walmart)<br><br>**Walmart:** A. Barron; A. Biedl; A. Bharara; A. Coon; A. Kerwin; A. Menon; A. O'brien; A. Robertson; A. Roe; A. Wright; B. Arvin; B. Austin; B. Foudy; B. Morrissey; B. Schommer; B. Wortman; C. Bresnahan; C. Crowson; Corporate Investigations; D. Hodges; D. Lobo; D. Marquardt; D. McChrystal; D. Sisavang; D. Worden; E. Rye; G. Hitt; G. Srinivasan; J. Becker, Paralegal, Walmart Legal Department; J. Doherty; J. England; J. Felton; J. Grewer; J. Howell; J. Jorgensen; J. Lewis; J. Macho; J. Poornl; J. Rader; J. Rice; J. Roseman; J. Suarez; J. Warner; K. Horne; K. McLaughlin; K. Rasmussen; K. Reynolds; K. Semel; K. Stuckey; K. Swan; K. Trost; L. Duffy; L. Enzor; L. Fragomeni; L. Hefner; L. Lanciault; Legal Hold Notice; M. Cabral; M. Gatlin; M. Hart; M. Lammey; M. Loken; M. McInnis; M. Trembley; M. Weber; N. Appleman; N. Brown; N. Waldmann; no-reply@corporate. Walmart. Com; P. Arora; P. Dyck; R. Evans; R. Ford; R. Herndon; R. Jeremias; R. Johnson; R. Kapur; R. Parvis; R. Westover; R. Westover, Paralegal, Walmart Legal Department; S. Boekhoff; S. Chambers; S. Curry; S. Donovan; S. Dozier; S. Gill; S. Huff; S. McFarlane; S. McFarlene; S. McHugh; S. Shendge; S. Simpson; S. Yu; T. Brooks; T. Edgerton; T. Hicks; T. Migliaccio; T. Miles; T. Moriarty; T. Scantling; T. Vandiver; V. Padilla, Paralegal, Walmart Legal Department; W. Hamlett; Z. Strickland<br><br>**Qualified Third-Parties:** R. Daniel (Welspun); D. Goenka (Welspun); ABO WL-SEBBA (Abo El-Sebaa Weaving Factories); R. Frasca Jr. (Grand ISS); S. Forensic, Inc.; S. Puri (Grand ISS); Grand ISS; R. Mandawewala (Welspun) | **Attorneys:** A. O'Shea, Esq. (Walmart); A. Roe; B. Balfe, Esq. (Walmart); C. Cook, Esq. (Walmart); C. Sharkey, Esq. (Walmart); D. Blackorby, Esq. (Walmart); D. Wiseman, Esq. (Walmart); E. Smith, Esq. (Walmart); J. Chung, Esq. (Walmart); J. England; J. Gearhart, Esq. (Walmart); J. Jorgensen; J. May-Brust, Esq. (Walmart); J. Nounou, Esq. (Walmart); J. Rader; J. Roseman; J. Snell, Esq. (Walmart); J. Suarez, Esq. (Walmart); K. Kotouc, Esq. (Walmart); K. Roberts, Esq. (Walmart); M. Singer, Esq. (Walmart); R. Maines-Corrado, Esq. (Walmart); S. Hardin, Esq. (Walmart); S. Reeves, Esq. (Walmart); T. Cheatham, Esq. (Walmart); T. Ewing, Esq. (Walmart); T. Mars, Esq. (Walmart); T. Wyand, Esq. (Walmart); W. Silcott, Esq. (Walmart)<br><br>**Walmart:** A. Barron; A. Coon; A. Menon; A. O'brien; A. Roe; A. Roe; A. Sepulveda; A. Simpson; A. Vishnoi; A. Woodward; A. Wright; B. Arvin; B. Austin; B. Berta; B. Butler; B. Foudy; B. Goodpasture; B. Harn; B. Leonard; B. Mahone; B. Morrissey; B. Schommer; B. Wortman; C. Cyrenne; C. Gonzalez; C. Moehring; C. Nelson; C. O'Connor; C. Preston; C. Webb; D. De La Garza; D. Goenka; D. Hodges; D. Kresovsky; D. Lobo; D. Marquardt; D. McChrystal; D. Reddy; D. Sisavang; D. Trujillo; D. Willie; E. Rye; G. Hitt; G. Srinivasan; G. Vasque; GISAT AI Team; GWO Team DL; I. Blank; L. Lopez; J. Alex; J. Basada; J. Baxley; J. Beck; J. Becker, Paralegal, Walmart Legal Department; J. Doherty; J. England; J. Flynn; J. Fung; J. Howell; J. Jorgensen; J. Lewis; J. Lough; J. Macho; J. Rader; J. Rice; J. Roseman; J. Saurneeber; J. Scudder; J. Warner; J. Warner; J. Yeh; K. Albertson; K. Griggs; K. Hinson; K. Horne; K. Rasmussen; K. Reynolds; K. Semel; K. Stuckey; K. Trost; L. Enzor; L. Fragomeni; L. Hefner; L. Lanciault; L. Isckes; M. Belaire; M. Bonilla; M. Cabral; M. Cordell; M. Gatlin; M. Hart; M. Horstmann; M. Kring; M. Lammey; M. Loken; M. McInnis; M. Reyes; M. Savlani; M. Sayer; M. Trembley; M. Weber; N. Appleman; N. Waldmann; no-reply@corporate. Walmart. Com; P. Arora; P. Dyck; P. Halford; P. Mucciolo; R. Gopalan; R. Hargrove; R. Herndon; R. Jeremias; R. Johnson; R. Westover, Paralegal, Walmart Legal Department; S. Arumugam; S. Beal; S. Bennett; S. Boekhoff; S. Bookout; S. Bray; S. Donovan; S. Gao; S. Gill; S. Haider; S. Huff; S. Kalavakolanu; S. Kenn; S. McCall; S. McFarlane; S. McHugh; S. Simpson; S. Thorn; S. Yu; T. Brooks; T. Edgerton; T. Gill; T. Hicks; T. Kalinina; T. Kubat; T. Lieberman; T. Migliaccio; T. Miles; T. Moriarty; T. Pourzand; Triage Governance Team; V. Padilla, Paralegal, Walmart Legal Department; W. Wilson; X. Clyburn; Z. Pasha<br><br>**Qualified Third-Parties:** R. Daniel (Welspun); wmtmcgdemand@mitchcommgroup. Com; D. Glaze (Mitchell Communications Group); R. Frasca Jr. (Grand ISS); S. Puri (Grand ISS); D. Goenka (Welspun); R. Mandawewala (Welspun) | **Attorneys:** D. Wiseman, Esq. (Walmart); A. O'Shea, Esq. (Walmart); A. Klestoff (ZG); M. Singer, Esq. (Walmart); J. Snell, Esq. (Walmart); K. Fortune, Esq. (Walmart); D. Blackorby, Esq. (Walmart); C. Sharkey, Esq. (Walmart); E. Smith, Esq. (Walmart); P. Conley, Esq. (Walmart); (Walmart); H. Nounou, Esq. (Walmart); T. Wyand, Esq. (Walmart); S. Hardin, Esq. (Walmart); E. Reynolds, Esq. (Walmart); D. Smiley, Esq. (Walmart); T. Mars, Esq. (Walmart)<br><br>**Walmart:** A. Bharara; A. Bhaskar; A. David; A. Eisa; A. Emmanuel; A. Karnaskar; A. Kerwin; A. Menon; A. Migliaccio; A. O'brien; A. Robertson; A. Roe; A. Wright; B. Besanceney; B. Chan; B. Foudy; B. McRaith; B. Morrison; B. Morrissey; B. Schommer; B. Spink; B. Wortman; C. Bresnahan; D. Bartlett; D. Kresovsky; D. Marquardt; D. Rau; D. Sisavang; D. Willie; D. Worden; E. Coutinho; E. Snukst; G. Hitt; G. Hitt; I. Blank; I. Daniels; I. Lopez; J. Roseman; J. England; J. Grewer; J. Howell; J. Jorgensen; J. Lewis; J. Macho; J. Rader; J. Roseman; J. Warner; K. Battikappa; K. Fortune; K. Gardner; K. Hinson; K. Reynolds; K. Sell; K. Semer; K. Stuckey; K. Trost; L. Enzor; L. Fragomeni; L. Hefner; L. Lanciault; L. Lopez; M. Belaire; M. Cabral; M. Finley; M. Lammey; M. Loken; M. McInnis; M. Weber; N. Appleman; N. Fries; N. Waldmann; O. Ameer; O. Fajardo-Guerrero; P. Arora; P. Bruno; P. Dyck; P. Nair; R. Gopalan; R. Herndon; R. Jeremias; R. Johnson; S. Gill; S. Huff; S. Knack; S. McFarlane; S. McHugh; S. Rudolhky; S. Wahba; T. Brooks; T. Edgerton; T. Hyde; T. Kalinina; T. Lieberman; T. Migliaccio; T. Moriarty; T. Scantling; T. Scantling; V. Kommineni; W. Hamlett<br><br>**Qualified Third-Parties:** D. Goenka (Welspun); M. Sarwan (Welspun); B. Bhatt (Welspun); SCP-Chief Operating Officer Grand ISS | Partially Privileged Wholly Privileged | Attorney Client Communication/Work Product Attorney Client Communication Attorney Work Product | Confidential email chain and attachment(s) regarding information in furtherance of representation in litigation related to labeling of bed linen products. | 375 | WM_00012955 WM_00015536 WM_00012964 WM_00012972 WM_00012979 WM_00013005 WM_00013006 WM_00013013 WM_00013020 WM_00013027 WM_00015647 WM_00016453 WM_00013030 WM_00013037 WM_00016659 WM_00016489 WM_00013109 WM_00013146 WM_00013217 WM_00013219 WM_00013268 WM_00015498 WM_00016506 WM_00016514 WM_00013280 WM_00013295 WM_00013297 WM_00013306 WM_00013309 WM_00013323 WM_00013340 WM_00013397 WM_00013398 WM_00013399 WM_00013403 WM_00013404 WM_00013405 WM_00013476 WM_00013588 WM_00013590 WM_00013594 WM_00013614 WM_00013625 WM_00013685 WM_00013864 WM_00014285 WM_00014548 WM_00014602 WM_00014603 WM_00014610 WM_00014622 WM_00016627 WM_00014655 WM_00016631 WM_00016634 WM_00016662 WM_00014665 WM_00014706 WM_00014708 WM_00014709 WM_00014719 WM_00016641 WM_00016643 WM_00016685 WM_00016686 WM_00016689 WM_00014810 WM_00014827 WM_00014838 WM_00016729 WM_00016730 WM_00016739 WM_00016752 WM_00016828 WM_00016848 WM_00016851 WM_00016854 |