**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| *In re Welspun Litigation* |

Civil Action No. 16-cv-06792 (RJS)

**PLAINTIFFS' ANSWERING MEMORANDUM IN OPPOSITION TO WELSPUN'S**
**AND TARGET'S ACCOUNTING FOR SANCTIONS**

Dated:  September 10, 2018

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joseph I. Marchese
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  scott@bursor.com
           jmarchese@bursor.com

**BURSOR & FISHER, P.A.**

Joel D. Smith (*pro hac vice*)
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  jsmith@bursor.com
           fklorczyk@bursor.com

*Interim Class Counsel*

**TABLE OF CONTENTS**

PAGE(S)

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ...................................................................................................... 3

 A. Defendants Seek Fees That Are Not Authorized by the Court's
  August 3, 2018 Order or Permitted Under the Law ................................... 5

  1. There Is No Evidence Supporting the Imposition of
   $50,642.46 in Sanctions for Briefing the GBL Claims ................................. 5

  2. Target Improperly Seeks Fees Related to the Motion to
   Dismiss and Strike Generally, Rather than the GBL Claims ....................... 7

   a) Target's Billing Records Show That Target Seeks
    Fees It Is Not Entitled to Recover ....................................................... 8

   b) Target's Supporting Declaration Shows That Target
    Seeks Fees It Is Not Entitled to Recover ........................................... 9

  3. Welspun Seeks Fees Unrelated to the GBL Claims .................................... 12

 B. Plaintiffs Did Not Act in Bad Faith .......................................................... 12

  1. Plaintiffs' Decision Not to Seek Leave to Amend After the
   Pre-motion Letters Were Filed Was Not Made in Bad Faith ..................... 12

  2. Plaintiffs Did Not Assert Facially Meritless Claims or
   Arguments for Purposes of Harassment or Delay ....................................... 16

III. CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*4 K&D Corp. v. Concierge Auctions, LLC*,
   2 F. Supp. 3d 525 (S.D.N.Y. 2014) ...................................................... 17

*Ceglia v. Zuckerberg*,
   2012 WL 503810 (W.D.N.Y. Feb. 14, 2012) ......................................... 7

*Centauri Shipping Ltd., v. W. Bulk Carriers KS*,
   528 F. Supp. 2d 197 (S.D.N.Y. 2007)............................................... 3, 13

*Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*,
   2017 WL 3393850 (S.D.N.Y. Aug. 4, 2017)......................................... 17

*Eastway Const. Corp. v. City of New York*,
   821 F.2d 121 (2d Cir. 1987)................................................................... 4

*Enmon v. Prospect Capital Corp.*,
   675 F.3d 138 (2d Cir. 2012)......................................................... 3, 4, 16

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .............................................................................. 5

*In re Automotive Parts Antitrust Litig.*,
   29 F. Supp. 3d 982 (E.D. Mich. July 3, 2014) .................................... 17

*In re Pennie & Edmonds, LLP*,
   323 F.3d 86 (2d Cir. 2003).................................................................... 3

*Int'l Cards Co., Ltd. v. Mastercard Int'l, Inc.*,
   2017 WL 3575254 (S.D.N.Y. Aug. 17, 2017)................................... 4, 13

*Kim v. Kimm*,
   884 F.3d 98 (2d Cir. 2018)............................................................... 3, 18

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   797 F.3d 160 (2d Cir. 2015)................................................... 15, 16, 18

*Marion S. Mishkin Law Office v. Lopalo*,
   646 Fed. Appx. 49 (2d Cir. 2016) .......................................................... 6

*Midamines Sprl. Ltd. v. KBC Bank NV*,
   2016 WL 1071028 (S.D.N.Y. Mar. 16, 2016) ................................ 2, 5, 6

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
   711 F.2d 1136 (2d. Cir. 1983)............................................................... 6

*Nietzke v. Williams*,
   490 U.S. 319 (1989)............................................................................ 16

*Offor v. Mercey Medical Center*,
    2018 WL 3364389 (S.D.N.Y. July 10, 2018) .................................................................. 4, 7, 12

*Pentagon Techs. Int'l Ltd. v. United States*,
    172 F. Supp. 2d 464 (S.D.N.Y. 2001)........................................................................................ 4

*Shukia v. Sharma*,
    2010 WL 8435857 (E.D.N.Y. Dec. 15, 2010) .................................................................... 6, 7

*Slinin v. Shnaider*,
    2017 WL 464426 (S.D.N.Y. Feb. 2, 2017)........................................................................... 15

*Virginia Properties, LLC v. T-Mobile Northeast LLC*,
    865 F.3d 110 (2d Cir. 2017).................................................................................. 4, 5, 12, 16

**STATUTES**

28 U.S.C. § 1927............................................................................................................................ 3

## I.     INTRODUCTION

The Court's August 3, 2018 Order was clear: "Defendants shall submit an accounting of fees associated with briefing the portions of their motions to dismiss pertaining to the deficiencies in Plaintiff's <u>New York General Business Law</u> ["GBL"] claims no later than August 27, 2018." (Doc. No. 166) (emphasis added).  At the hearing that same day, the Court noted the issues involved only "a small piece of the brief probably," and explained that if sanctions were awarded, "I'm not suggesting that it's going to be tens of thousands of dollars."  Aug. 3, 2018 Hearing Tr. at 13:5-11 (excerpts attached as **Exhibit 1**).  "I think $25,000 or $10,000 or $50,000 sounds like a lot to me.  [Defendants] are going to have to explain what exactly was spent and why that's reasonable."  *Id.* at 69:21-24.

Welspun India, Welspun USA (together, "Welspun") and Target now seek, collectively, **$50,642.46** to brief issues pertaining to the GBL claims that were simple, already covered in their pre-motion letter, and partially uncontested.[1]  The GBL claims received little briefing, and Welspun and Target modeled their briefs on the pre-motion letter and from each other (relying, for instance, largely on the same authorities).[2]  The GBL sections in the Retailer Defendants' opening and reply briefs, <u>combined</u>, totaled approximately 900 words, whereas Welspun's briefing was approximately 477 words.  Smith Decl. ¶ 11.  That means Target is seeking

---

[1] Target seeks $41,640.28 and Welspun seeks $9,002.18.  Defendants Bed Bath & Beyond and Walmart seek no fees.

[2] Relevant excerpts of Defendants' pre-motion letter and briefing are attached to the concurrently-filed Declaration of Joel D. Smith.  *See* **Exhibit 2**, Excerpts of Defendants' September 15, 2017 Pre-motion Letter ("Pre-motion Letter") (Doc. No. 115); **Exhibit 3**, Excerpts of Memorandum in Support the Welspun's Motion to Dismiss ("Welspun Opening Brf.") (Doc. No. 122); **Exhibit 4**, Excerpts of Reply Memorandum in Support of Welspun's Motion to Dismiss ("Welspun Reply") (Doc. No. 137); **Exhibit 5**, Excerpts of Memorandum in Support of the Retailer Defendants' Motion to Dismiss (Doc No. 125) ("Retailer Opening Brf."); **Exhibit 6**, Excerpts of Reply Memorandum in Support of the Retailer Defendants' Motion to Dismiss ("Retailer Reply") (Doc. No. 139); **Exhibit 7**, Excerpts of Target's Separate Reply Brief ("Target Reply") (Doc. No. 140).

approximately $46 per word, or $16,656 per page, while Welspun is seeking approximately $19 per word, or $6,001 per page.

Target and Welspun fail to break out any time or resources spent solely on the GBL claims. In fact, Target's billing records and supporting declaration show <u>no</u> time spent on the GBL claims, which makes sense because Plaintiffs never argued in their pre-motion letter or briefing that they intended to assert a GBL claim against Target. Welspun, on the other hand, forfeited any right to fees by failing to submit any billing records at all. *See Midamines Sprl. Ltd. v. KBC Bank NV*, 2016 WL 1071028, at *2 (S.D.N.Y. Mar. 16, 2016) (Sullivan, J.) ("The party seeking fees must submit contemporaneous time records to support its application, specifying for each attorney, the date, the hours expended, and the nature of the work done.").

Target and Welspun also violated the Court's August 3, 2018 Order by claiming— without explanation—that they "understand" the order to permit the recovery of fees related to their respective jurisdictional arguments.[3] The Order was expressly limited to the GBL claims. Worse, Target represents that it seeks $41,640.28 in fees for work done in connection with its jurisdictional defense, but that is false. Target's billing records show it is primarily seeking fees for briefing the motion to dismiss and strike the class allegations generally. In three months of invoices submitted by Target, only a handful of billing entries say they pertain to Target's personal jurisdiction defense.

Finally, Plaintiffs respectfully submit that no sanctions are warranted because the record does not support the conclusion that Plaintiffs acted in bad faith by failing to promptly seek leave to amend after the pre-motion letters were filed. The parties did not have the benefit of a pre-

---

[3] *See* Target Accounting for Sanctions at 2 (Doc. No. 172) ("Target understands the Court's Order to apply as well to fees associated with briefing of Target's personal jurisdiction motion . . . ."); Haskell Decl. ¶ 3 (Doc. No. 174-1) ("The Welspun Defendants also understood that the Court was awarding fees associated with Welspun's personal jurisdiction arguments" related to the absence of an allegation that Mr. Jividen made his purchase in New York).

motion conference, and the Court's individual rules and practices do not explain the purpose of

the pre-motion letter procedure.  At the August 25, 2017 initial conference in this case, the Court

and the parties discussed how the letters would preview arguments and improve the briefing on

the motion to dismiss, but there was no suggestion that failure to seek leave to amend in lieu of

briefing could warrant sanctions.  After the pre-motion letters were filed, the Court set a briefing

schedule on the motions to dismiss, which Plaintiffs assumed governed the next steps.  *See* Sept.

21, 2017 Order (Doc. No. 118).  This is not a case involving misrepresentations to the Court,

harassment or intentional delay.  There also is no legal basis to award sanctions related to the

issue of whether New York Plaintiff Mr. Jividen was required to allege he purchased products in

New York, or whether Target waived its jurisdictional defense (the latter of which has nothing to

do with the GBL claims anyway).  Both issues involved genuine legal disputes, and Plaintiffs

had a factual and legal basis for their positions on those issues.

## II.    ARGUMENT

"To impose sanctions under [28 U.S.C. § 1927], a court must find clear evidence that (1)

the offending party's claims were entirely without color, and (2) the claims were brought in bad

faith—that is, 'motivated by improper purposes such as harassment or delay."  *Kim v. Kimm*, 884

F.3d 98, 106 (2d Cir. 2018) (internal quotation omitted).  As this Court has held, where sanction

proceedings are initiated by a court instead of an opposing party, the proceedings are "subject to

the heightened standard of subjective bad faith established by the Second Circuit in *Pennie.*"

*Centauri Shipping Ltd., v. W. Bulk Carriers KS*, 528 F. Supp. 2d 197, 199-200 (S.D.N.Y. 2007)

(Sullivan, J.) (citing *In re Pennie & Edmonds, LLP*, 323 F.3d 86, 91-92 (2d Cir. 2003)).  The

lower, "objective unreasonableness" standard does not apply.  *See id.*

Whether acting under its inherent authority or § 1927, a court "focus[es] on the purpose

rather than the effect of the sanctioned attorney's activities," *Enmon v. Prospect Capital Corp.*,

675 F.3d 138, 145 (2d Cir. 2012), and the Second Circuit "require[s] a high degree of specificity in the factual findings of lower courts upon which sanctions for bad faith are based." *Virginia Properties, LLC v. T-Mobile Northeast LLC*, 865 F.3d 110, 114 (2d Cir. 2017) (reversing award of sanctions and remanding for further proceedings); *see also Int'l Cards Co., Ltd. v. Mastercard Int'l, Inc.*, 2017 WL 3575254, at *2 (S.D.N.Y. Aug. 17, 2017) ("*International Cards*") (following *Enmon* and *Virginia Properties* in denying sanctions). "The imposition of sanctions also is improper when the court's order cannot be located within the range of permissible decisions." *Virginia Properties*, 865 F.2d at 113 (internal quotation omitted).

When sanctions are imposed, they must be "limited to fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Id.* at 112. A "defendant is not entitled to reimbursement for fees and costs it would have incurred in the normal course of litigation, nor is it entitled to those which were not directly caused by plaintiff's sanctionable conduct." *Offor v. Mercey Medical Center*, 2018 WL 3364389, at *6 (S.D.N.Y. July 10, 2018). Sanctions need not be based on the lodestar, and "should be the minimum needed to deter plaintiff['s] counsel's conduct without over-punishing him." *Pentagon Techs. Int'l Ltd. v. United States*, 172 F. Supp. 2d 464, 474 (S.D.N.Y. 2001); *see also Eastway Const. Corp. v. City of New York*, 821 F.2d 121, 123 (2d Cir. 1987) (courts have discretion to "award only that portion of a defendant's attorney's fee thought reasonable to serve the sanctioning purpose of [Rule 11]" and "fees far below the lodestar amount have frequently been awarded").

For the reasons set forth below, it would be reversible error to impose any sanctions in this case, much less the bloated amounts claimed by Target and Welspun. At a minimum, the requested fees should be significantly reduced because $50,642.46 bears no relationship to the small amount of briefing done on the GBL claims in the motions to dismiss.

## A. Defendants Seek Fees That Are Not Authorized by the Court's August 3, 2018 Order or Permitted Under the Law

Target and the Welspun bear the burden of establishing that the fees they seek ($41,640.28 for Target and $9,002.18 for Welspun) are reasonable and pertain to the GBL claims. *Midamines Sprl Ltd. v. KBC Bank NV*, 2016 WL 1071028, at *2 (S.D.N.Y. Mar. 16, 2016) (Sullivan, J.) ("It is the burden of the party requesting fees to 'submit evidence supporting the hours worked and the rates claimed.'") (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Virginia Properties*, 865 F.2d at 113 (fees for sanctions must be limited to those that directly relate to the sanctionable conduct). As set forth below, no sanctions should be imposed because: (1) Defendants' fee calculations are insufficiently supported; and (2) Defendants are seeking fees for matters unrelated to the GBL claims.

### 1. There Is No Evidence Supporting the Imposition of $50,642.46 in Sanctions for Briefing the GBL Claims

Target's request for fees should be denied in its entirety because it does not contend that it spent <u>any</u> time at all briefing the GBL claims, and its billing records and supporting declaration show no such time. *See* Target Billing Records (Doc. Nos. 173-1, 173-2, 173-3). That should come as no surprise because it was clear from Plaintiffs' pre-motion letter and opposition brief that the only plaintiff who intended to assert GBL claims at that time was New York Plaintiff Jividen, and that he did not intend to assert claims against Target and Walmart. *See* Sept. 20, 2017 Letter at 4 (Doc. No. 117); Oppn to MTD, at 20-21 (Doc. No. 132). There is no reason why Target would have incurred anything more than de minimis fees, if even that, addressing the GBL claims. Target worked with other Retailer Defendants on their joint motion to dismiss (*see* Rappoport Declaration, ¶ 8), and thus it appears likely that another defendant took the lead addressing the GBL claims.

Welspun's request for fees should be denied in its entirety because Welspun failed to submit any billing records. In *New York State Ass'n for Retarded Children, Inc. v. Carey*, the Second Circuit stated:

> [C]ontemporaneous time records are a prerequisite for attorney's fees in this Circuit. ... [W]e think it appropriate to convert our previously expressed preference for contemporaneous time records into a mandatory requirement. ... Hereafter, any attorney-whether a private practitioner or an employee of a nonprofit law office-who applies for court-ordered compensation in this Circuit for work done after the date of this opinion must document the application with contemporaneous time records. These records should specify, for each attorney, the date, the hours expended, and the nature of the work done.

711 F.2d 1136, 1147-48 (2d. Cir. 1983). The rule in *Carey* remains the law today, and this Court has followed that rule when imposing sanctions. *See*, *e.g.*, *Marion S. Mishkin Law Office v. Lopalo*, 646 Fed. Appx. 49 (2d Cir. 2016) (reaffirming and following *Carey*), *Midamines*, 2016 WL 1071028, at *2 ("The party seeking fees must submit contemporaneous time records to support its application, specifying for each attorney, the date, the hours expended, and the nature of the work done."). Welspun's own authority cited in support of its accounting of fees held that "fee applications are subject to denial where the fees have not been adequately documented." *Shukia v. Sharma*, 2010 WL 8435857, at *5 (E.D.N.Y. Dec. 15, 2010). In a footnote, Welspun offers to submit billing records to the Court for *in camera* review on request. That proposal is prejudicial because: (a) there is no reason redacted and unredacted records could not have been submitted before; and (b) Plaintiffs should have had the opportunity to scrutinize redacted invoices for purposes of this responsive brief. *Cf. Midamines*, 2016 WL 1071028 at *3 (noting that the party seeking fees submitted redacted and unredacted invoices).

Moreover, the method Welspun used to calculate $9,002.18 in fees is unsupported by case law, results in an excessive amount, and appears to include work done in connection with

the pre-motion letter rather than the briefing on the motion to dismiss.[4]  Welspun first contends that <u>three</u> attorneys were needed to draft 2.5 pages of briefing (when, in fact, its briefing on the GBL claims was closer to 1.5 pages), and that none of them can estimate how much time that took.  Haskel Decl. ¶¶ 4-5.  Welspun then estimates the fees based on the percentage of their briefs that reference the GBL claims.  Welspun's opening brief, however, simply reiterated the argument made in the pre-motion letter, and relied on the same principal case, with no additional work other than the addition of two cases in a string cite.  *Compare* Excerpts of Pre-motion Letter (**Exhibit 2**) *with* Excerpts of Welspun Opening Brf. (**Exhibit 3**).  Welspun's reply brief devoted only one, short paragraph to the GBL claims.  *See* Excerpts of Welspun Reply, p. 14 (**Exhibit 4**).  There is no reason to think that Welspun came anywhere close to incurring $9,002.18 in fees to brief the GBL claims, and if it did, the amount is excessive.

### 2. Target Improperly Seeks Fees Related to the Motion to Dismiss and Strike Generally, Rather than the GBL Claims

Target says it chose to "understand" the August 3, 2018 Order to cover fees for briefing issues concerning its personal jurisdiction defense and Plaintiffs' waiver argument.  *See* Target Accounting for Sanctions, at 2 (Doc. No. 172).  The Court's August 3, 2018 Order expressly limited fees to those incurred in connection with the GBL claims.  Target's purported "understanding" violates this Court's order and contradicts the rule that fees awarded must be limited to that are "directly caused by plaintiff's sanctionable conduct."  *Offor*, 2018 WL 3364389, at *6.  As set forth below, even if the Court considered imposing fees related to

---

[4] Welspun erroneously cites *Shukia* and *Ceglia v. Zuckerberg*, 2012 WL 503810 (W.D.N.Y. Feb. 14, 2012), for the proposition that parties do not have to submit billing records, and may instead rely on an estimate of the percentage of time their attorneys spent on an issue.  In both cases, the courts estimated the percentage <u>after</u> reviewing detailed billing records or billing schedules, which Welspun withheld here.  *See Shukia*, 2010 WL 8435857, at *3 (party seeking fees submitted "contemporaneous billing records" with counsel's affidavit); *Ceglia*, 2012 WL 503810, at *17 (party seeking fees submitted "detailed narrative on the Billing Schedule, which was compiled from the contemporaneous billing records").

Target's jurisdictional defense, Target's billing records show that Target is seeking fees related to the motion to dismiss and strike generally.  The Declaration of Steve Rappoport submitted in support of the fees also confirms that Target is seeking fees it is not entitled to recover.

### a)  Target's Billing Records Show That Target Seeks Fees It Is Not Entitled to Recover

Target's billing records show that most of its fees pertain to work that has nothing to do with its personal jurisdiction defense.  Several entries concern the fraud allegations and defendants' motion to strike the class allegations.[5]  Target also seeks fees for "reviewing" and "revising" the Welspun Defendants' motion to dismiss, and reviewing Plaintiffs' opposition to the Welspun Defendants' briefing.[6]  Most of the entries in Target's billing records relate to the motions to dismiss or replies generally, and include work such as "review[ing] defense counsel revisions to draft motions to dismiss;" "drafting [a] summary of [the] opposition papers for client;" "confer[ing] with defense counsel regarding oppositions to motion to dismiss and division of labor in reply briefs;" consulting "with defense counsel regarding motion for extension of reply brief;" and general cite checking.[7]  To make this point clear, Plaintiffs submit as an exhibit Target's invoices, highlighting in red every entry that either does not reference personal jurisdiction at all, or if it does, appears to also include work unrelated to that issue.  *See* **Exhibit 8**.

---

[5] *See* Ex. C to Rappoport Decl. (Doc. No. 173-3), November 21 entry (Rappoport), November 27 entry (Levitt), November 28 entry (Grossman), and November 29 entry (Grossman).

[6] *See* Ex. B to Rappoport Decl. (Doc. No. 173-2), October 11 entry (Levitt) and October 13 entry (Levitt); Ex. C to Rappoport Decl. (Doc. No. 173-3), November 14 multiple entries (Levitt), and November 28 entry (Rappoport).

[7] *See*, *e.g.*, Ex. B to Rappoport Decl. (Doc. No. 173-2), October 11 entry (Levitt) and October 12 entry (Levitt); Ex. C to Rappoport Decl. (Doc. No. 173-3), November 14 entry (Rappoport), November 15 entry (Levitt), November 17 multiple entries (Levitt), November 29 entry (Grossman), and November 30 entry (Grossman).

Even if the Court were to impose fees incurred in connection with Target's personal jurisdiction arguments, only <u>seven</u> entries in Target's billing records pertain solely to personal jurisdiction, and the fees for those entries total only $7,182.48 of the $41,640.25 Target is requesting.[8]  In five additional entries, the attorneys block-billed for working on jurisdictional issues along with other issues pertaining to the motion to dismiss, such as the fraud allegations or the motion to strike the class allegations.[9]  The additional fees for those entries total $5,633.84, but that amount is not recoverable because it includes fees for work done on the motions generally.

### b)  Target's Supporting Declaration Shows That Target Seeks Fees It Is Not Entitled to Recover

The Declaration of Steven Rappoport filed in support of Target's Accounting for Sanctions (Doc. No. 173) summarizes the work done on a month-by-month basis, and further confirms that Target is not entitled to recover any fees here.  Mr. Rappoport does not say Target did any work in connection with the GBL claims; instead, he only describes work done in connection with Target's personal jurisdiction arguments.  And again, even if the Court considered imposing sanctions related to that issue, Mr. Rappoport's declaration does not support the fees Target seeks.  <u>First</u>, Mr. Rappoport claims that "most of the time" reflected in Target's September 2017 bill (totaling $6,778.24) was spent researching Plaintiffs' waiver argument and drafting Target's jurisdictional motion to dismiss.  Rappoport Decl. ¶ 12.  As explained in

---

[8] *See* Ex. A to Rappoport Decl. (Doc. No. 173-1), September 10 entry (Levitt) and September 21 multiple entries (Park); Ex. B to Rappoport Decl. (Doc. No. 173-2), October 4 entry (Rappoport); Ex. C to Rappoport Decl. (Doc. No. 173-3), November 17 entry (Rappoport) and November 20 multiple entries (Levitt).

[9] *See* Ex. A to Rappoport Decl. (Doc. No. 173-1), September 10 entry (Levitt) and September 21 entry (Rappoport); Ex. B to Rappoport Decl. (Doc. No. 173-2), October 9 entry (Park); Ex. C to Rappoport Decl. (Doc. No. 173-3), November 21 entry (Rappoport) and November 27 entry (Levitt).

Section II(B)(2) below (p. 18), however, there is no legal basis for Target to recover fees related to briefing on Plaintiffs' waiver argument.

Second, for the October 2017 bill, Target seeks an additional $14,765.04 for work purportedly related to Target's personal jurisdiction defense.  Rappoport Decl. ¶ 13.  Yet Target's billing records indicate Target is actually seeking fees for other work too.  Only two of the entries in the October invoice say they relate to personal jurisdiction, one of which also apparently involved work on the motion to strike class allegations.[10]

Third, for November 2017, Target contends it seeks $20,097 for a five-page reply brief, and claims it discounted the bill by 25% because that brief "was not entirely about the court's lack of personal jurisdiction over Target."  Rappoport Decl. ¶ 14 (Doc. No. 173).  That is disingenuous on several fronts.  For starters, Target does not explain why most of the entries in the November 2017 invoice have nothing to do with the jurisdictional issues, but instead relate generally to the motion to dismiss and to strike the class allegations.  *See generally* Ex. C to Rappoport Decl. (Doc. No. 173-3).  Further, to say that the reply brief "was not entirely about the court's lack of personal jurisdiction over Target," is a misleading understatement.  The only part of the reply brief addressing personal jurisdiction was a three-sentence long section stating Plaintiffs did not dispute lack of personal jurisdiction over Target.  Target Reply at 1 (**Exhibit 7**). Target does not (and cannot) legitimately argue that those three sentences cost over $20,000 to write.

In its reply brief, Target primarily argued against Plaintiffs' request to add a new plaintiff asserting claims against Target, and thus Target is really seeking $20,097 for briefing an argument it later abandoned.  Specifically, in its May 18, 2018 submission concerning the

---

[10] Ex. B to Rappoport Decl. (Doc. No. 173-2), October 4 entry (Rappoport) and October 9 entry (Park).

proposed Second Amended Complaint, Target reversed itself and stated that it did not oppose

adding the new plaintiff.  May 18, 2018 Target Letter, at p. 1 ("Target does not oppose plaintiffs'

other amendment curing the lack of personal jurisdiction over Target") (Doc. No. 159).  At the

August 3, 2018 hearing, defense counsel repeatedly acknowledged that it was more efficient to

add another plaintiff than filing another complaint and consolidating the new action with this

one:

> THE COURT: What does [denying leave to amend] accomplish is
> the point Mr. Bursor made, which is you're just going to end up
> being in another proceeding, right?
>
> MR. SERINO: That's the point, your Honor. That's why and if
> you'll notice in our letter, we kind of suggested a split-the-baby
> approach; that it would be OK if they could amend their complaint
> to say Jividen bought in New York. **It would be OK if they could
> amend their complaint to say that two new plaintiffs are going
> to be joined who allege they bought from Walmart and Target
> in New York because it's not efficient to have another suit and
> then a motion to consolidate**

Aug. 3, 2018 Hearing Tr. at 20:19-21:4 (excerpts attached as **Exhibit 1**) (emphasis added); *see*

*also id.* at 22:7-11 ("We think you could deny [amendment] altogether, but it will be inefficient

because they will file another case on behalf of two New York plaintiffs who bought from Target

and WalMart and they will add the Jividen allegation.").  The position advanced by defense

counsel at the August 3, 2018 hearing was the same position advanced by Plaintiffs when they

first asked for leave to amend to add a new plaintiff.  *See* Opposition to Retailer Defendants'

Motion to Dismiss, at p. 23 ("There is no prejudice because amendment is more efficient than

having the plaintiff file her own complaint, which presumably would be consolidated with these

proceedings anyway.") (Doc. No. 133).  Plaintiffs should not have to pay for briefing arguments

that Target later abandoned after acknowledging its position was inefficient.

    In short, putting aside the fact that Target's personal jurisdiction arguments are outside

the scope of this Court's August 3, 2018 order, Target is seeking substantial fees "incurred in the

normal course of litigation" and that have nothing to do with the allegedly sanctionable conduct. *See Offor*, 2018 WL 3364389, at *6; *Virginia Properties*, 865 F.2d at 112 (sanctions are "limited to fees the innocent party incurred solely because of the misconduct").

### 3.   Welspun Seeks Fees Unrelated to the GBL Claims

Like Target, Welspun says it chose to "understand" the Court's order to allow it to seek fees spent briefing "Welspun India Ltd.'s personal jurisdiction arguments" to the extent they were related to Plaintiff's failure "to allege any purchases made in New York."  Haskell Decl. ¶ 3 (Doc. No. 174-1).  Welspun India made lengthy arguments concerning personal jurisdiction (see generally Doc. Nos. 122, 137), and it does not parse out what proportion of time was spent briefing personal jurisdiction arguments as opposed to the GBL claims.  Moreover, there was a genuine legal dispute about whether Mr. Jividen was required to allege his purchase occurred in New York, particularly given that by the time Defendants filed their reply briefs, he had already verified under oath that his purchase had, in fact, occurred in New York.  As explained in Section II(B)(2) below (p. 17), the Court should not permit Defendants to recover fees for time spent briefing that issue.

### B.   Plaintiffs Did Not Act in Bad Faith

#### 1.   Plaintiffs' Decision Not to Seek Leave to Amend After the Pre-motion Letters Were Filed Was Not Made in Bad Faith

At the hearing on August 3, 2018, the Court faulted Plaintiffs for not seeking leave to amend after the pre-motion letters were filed, and indicated that would be the basis for shifting costs if the Court chose to do that.  *See* Aug. 3, 2018 Hearing Tr. at 31:10-13 ("But I do think I am more than inclined to shift the costs on that because I think – otherwise, I just think I'll get rid of the premotion letter requirement altogether and that's not a litigant's decision to make."); *see also id.* at 5:5-7 ("All I can do is shift costs for the failure to respond or act after the deficiencies in a complaint have been demonstrated [in the pre-motion letters]").  However,

disapproval of counsel's decisions, standing alone, does not support sanctions.  In *Centauri Shipping*, for example, this Court decided against sanctions "despite [its] disapproval of Counsel's conduct in [that] action," because the record did not support a finding of "bad faith or willful intent" to engage in improper conduct.  *See Centauri Shipping*, 528 F. Supp. at 201.  Similarly, in *International Cards*, 2017 WL 3575254, at *4, the district court found "that the course of [the] litigation had been regrettable," but ultimately decided there was no evidence of bad faith supporting sanctions.  The same outcome is warranted here because there was no bad faith or willful intent to thwart the Court's pre-motion procedures.

<u>First</u>, the parties did not have the benefit of a pre-motion conference after receiving the pre-motion letters.  *See* September 21, 2017 Order (Doc. No. 118) (scheduling briefing without a pre-motion conference).  The Court's individual rules and practices do not state that failure to seek leave to amend after receiving pre-motion letters may warrant sanctions.  Prior to the August 3, 2018 hearing, the only time the parties and the Court discussed the pre-motion procedure was at the August 25, 2017 case management conference.  At that time, the Court initially questioned whether pre-motion letters were even necessary in this case, but then explained the purpose of the pre-motion letters in the following exchange:

> THE COURT: All right. Let me ask the plaintiffs, is there a point to pre-motion letters? Again, I tell you my general inclination is to have pre-motion conferences and pre-motion letters because it just, again, **it helps me get my head around the issues early, and sometimes it will allow me to help steer your briefing, because there will be certain things that, at a pre-motion conference, I do my homework and so I have some preliminary thoughts about what I think**. You are certainly free to talk me out of it or to persuade me that I've missed something. That's the purpose of it. But there are times when I think it can inform briefing, when you can say, all right, he seems to get A, B, and C, but he's in the dark on D so we really need to educate him. And that's not a bad thing, I think, in terms of briefing.
>
> But if we know it's coming, it may be it's an unnecessary intermediate step. What do you think, Mr. Bursor?

13

> MR. BURSOR: I'm at a disadvantage because I have no idea what the grounds for the motion would be.  But I would defer to your Honor because I think they're going to make those motions regardless of what happens with the exchange of letters, so if the question is, you know, will the pre-motion conference discourage the motion or not, I think it's not going to have an effect. **But I do think that those letters and the conferences with the Court often do help the parties to understand what's the best way to brief the motion**. So on balance I would say I'd rather do it than not do it. But I defer to your Honor.
>
> THE COURT: Let's do the letters, and then if, upon reviewing the letters, I just say, it's not worth grabbing everybody and bringing them back in here, I can just see what this is costing all of you, you know, then maybe I'll just say let's just go with a briefing schedule. . . .

Aug. 25, 2017 Conference Tr. at 6:5-7:17 (emphasis added) (excerpts attached as **Exhibit 9**).

The above-quoted exchange shows that the focus—at least at the time—was on better understanding and framing arguments in the briefing.  There was no suggestion that Defendants should focus their pre-motion letter on matters that could easily be cured via amendment.  There was no suggestion that failure to seek leave to amend in lieu of briefing, without the benefit of a pre-motion conference to discuss the next steps, could prompt sanctions.  The Court later set a briefing schedule on the motions to dismiss, and the dates were not contingent on whether the Plaintiffs sought leave to amend after the pre-motion letters were filed.  *See* September 21, 2017 Order (Doc. No. 118).  That fact further fostered the impression that the pre-motion letters were intended to preview the briefs, and that briefing was expected to go forward after the letters were filed.  Defendants presumably shared the same understanding because they never argued for sanctions in their motions to dismiss.

Moreover, the fact that Plaintiffs' counsel endorsed the pre-motion letters and conference during the August 25, 2017 conference is evidence of counsel's intention to participate in the process in good faith.  If Plaintiffs had known later that the Court expected Plaintiffs to amend

instead of briefing the motion to dismiss, they would have done so.  In this regard, a pre-motion conference would likely have been beneficial.

Second, although Plaintiffs could have moved for leave to amend the GBL allegations after receiving the pre-motion letters, counsel did not perceive a need to do so because it would have resulted in a series of inefficient, piecemeal amendments to the complaint.  Importantly, Plaintiffs agreed that Mr. Jividen was the only Plaintiff seeking to pursue GBL claims, and that he did not allege claims against Target and Walmart; thus, Plaintiffs anticipated that nothing more than a sentence of briefing, if even that, was required on those issues.  The real dispute was over whether Mr. Jividen was required to allege that he purchased the challenged products in New York, particularly given that he had verified under oath that he had.  As shown in Section II(B)(2) below (p. 17), that issue involved a genuine legal dispute, and under *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), Plaintiffs were not required to abandon their position based on one distinguishable case cited in Defendants' pre-motion letter.  Moreover, if Plaintiffs had sought leave to amend on those issues, then the Court still would have to rule on the numerous other issues raised in the pre-motion letters and motions, likely leading to yet another amended complaint.  Plaintiffs reasonably expected that the Court would rule on the motions and that, with the benefit of the Court's ruling, all necessary amendments would be made in one amended complaint.

Third, Plaintiffs' decisions concerning amendment were consistent with the Second Circuit's decision in *Loreley*.  As this Court has explained, *Loreley* "appears to embrace the notion that a plaintiff is entitled to review a 'fully briefed' dispositive motion – or even a ruling on such a motion – before deciding whether to exercise his right to amend under Rule 15(a)(1)." *Slinin v. Shnaider*, 2017 WL 464426, at *8 (S.D.N.Y. Feb. 2, 2017).  The Second Circuit also approved of the practice of clearly requesting leave to amend in a brief opposing a motion to

dismiss, concluding that "given the posture of the case, Plaintiffs were not obliged to formulate

their request differently."  *See Loreley*, 797 F.3d at 191.  Plaintiffs did the same thing here.

At the August 3, 2018 hearing, the Court noted that *Loreley* appeared to support

Plaintiffs' decision not to amend right away:

> I think after the Second Circuit's decision in *Loreley*, which was a
> reversal of me, but I think in sort of a strange way they have
> almost encouraged this kind of thing, and I think that clearly was
> written by somebody who has never done a day of discovery in his
> life on any end of the spectrum -- from here from there from any
> place.  In any event, it is what it is.  I got to follow up.  So I guess
> I'm inclined to allow an amendment for those things that aren't
> futile, and I think some of them are.  But to the extent that they
> were things that were pointed out earlier by the defendants, I think
> I am likely to shift costs.  It seems to me after *Loreley* that is all I
> can do.  All I can do is shift costs for the failure to respond or act
> after the deficiencies in a complaint have been demonstrated.  So I
> think that's what I'm likely to do.

Aug. 3, 2018 Hearing Tr. at 4:22-5:10.  Plaintiffs respectfully submit that sanctioning them for

acting in a manner consistent with *Loreley* would not be "within the range of permissible

decisions."  *Virginia Properties*, 865 F.3d at 113.

## 2. Plaintiffs Did Not Assert Facially Meritless Claims or Arguments for Purposes of Harassment or Delay

Target and Welspun both seek fees for briefing the issue of whether Mr. Jividen was

required to allege he purchased his products in New York, and Target seeks fees for briefing the

issue of waiver (the latter of which is clearly outside the scope of the August 3, 2018 Order).

Target and Welspun are not permitted to recover fees incurred addressing those issues.  A

"frivolous" claim "lacks an arguable basis either in law or in fact."  *Nietzke v. Williams*, 490 U.S.

319, 324-25 (1989).  "Conversely, a claim is colorable when it has some legal and factual

support, considered in light of the reasonable beliefs of the individual making the claim."

*Emmon*, 675 F.3d at 143 (internal quotation omitted).  As this Court has explained, the mere fact

"[t]hat a court ultimately disagreed with a plaintiff's position . . . is not enough" to establish that

the position was frivolous or objectively unreasonable.  *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, 2017 WL 3393850, at \*2 (S.D.N.Y. Aug. 4, 2017) (Sullivan, J.).  Here, the record establishes that Plaintiffs never asserted frivolous positions warranting sanctions.

     First, Plaintiffs never argued in connection with the motion to dismiss that Mr. Jividen intended to assert GBL claims against Walmart and Target, or that the California Plaintiffs purported to assert GBL claims against anyone.  Sept. 20, 2017 Letter at 4 (Doc. No. 117); Opp'n to MTD at 20-21 (Doc. No. 132).  Those points were uncontested, and thus required no more than a bare mention in the briefing.

     Second, there is no real dispute in this case that Mr. Jividen has standing to pursue GBL claims against Welspun and Bed Bath & Beyond.  On November 17, 2017, before briefing on the motion to dismiss was completed, Mr. Jividen served a verified interrogatory response confirming that he purchased Welspun-made linens from a Bed Bath & Beyond store in New York.  Hence, this is not a case where a party made sham allegations or claims without a factual basis.

     Instead, the standing argument boiled down to a legal dispute about whether Mr. Jividen was required to allege he purchased his products in New York given that he lived there.  As to that issue, Defendants cited only one case in their pre-motion letter, and it was not on point because it did not involve plaintiffs who lived in New York.  *See 4 K&D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 533, 547 (S.D.N.Y. 2014) (explaining plaintiffs were from North Carolina and Illinois).  Plaintiffs cited contrary authorities supporting their position that the Court may reasonably infer that plaintiffs purchase products in the state where they reside. *E.g.*, *In re Automotive Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1004 (E.D. Mich. July 3, 2014) ("Even if [plaintiffs] failed to allege that their purchases occurred in the jurisdictions in which they resided, the Court infers that to be the case" because the "complaint, read in the light most

favorable to their claims, warrants the inference").  In the absence of contrary Second Circuit

authority clearly on point, Plaintiffs' position was "not so obviously foreclosed by precedent as

to make [it] legally indefensible."  *Kim*, 884 F.3d at 106.  Moreover, under *Loreley*, Plaintiffs

were not required to accept Defendants' position based on their pre-motion letter alone, and

without a decision from the Court.  *See Loreley*, 797 F.3d at 191 ("pleading defects . . . may also

be borderline, and hence subject to reasonable dispute.").  Although the Court ultimately

disagreed with Plaintiffs, they had a legitimate, arguable basis for their position.

 <u>Third</u>, Plaintiffs also had a legal and factual basis to assert their waiver argument with

respect to Target.  Target all but conceded it never said anything about personal jurisdiction until

it filed its pre-motion letter, long after participating in mediation and discovery.  *See* May 18,

2018 Target Letter at p. 3 (Doc. No. 159) ("After waiting for mediation to conclude, Target

formally raised its jurisdictional defense in the September 15, 2017 pre-motion letter.").  Target

also acknowledged that Plaintiffs cited specific facts supporting their waiver argument, and

"cited cases they claimed supported their argument as to the alleged waiver."  Rappoport Decl.

¶ 5 (Doc. No. 173).

 Target contends that the fact that Plaintiffs later withdrew the waiver argument after

reviewing Target's motion to dismiss is evidence of bad faith.  *See id*. ¶ 16.  That is wrong.

Target did not address waiver in its pre-motion letter, and therefore there was no opportunity to

evaluate Target's position on waiver until after it filed its motion to dismiss.  The Second

Circuit's decision in *Loreley*, 797 F.3d at 190, contemplates plaintiffs reevaluating their claims in

light of arguments made in a motion to dismiss, which is an act of good faith, and exactly what

Plaintiffs did here.

## III.     CONCLUSION

For the foregoing reasons, the Court should decline to award any fees to Target and

Welspun.  Sanctions are not warranted, and even if they are, Defendants failed to show what

fees, if any, were reasonably incurred in connection with Plaintiffs' GBL claims.

Dated:  September 10, 2018                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: ___*/s/ Scott A. Bursor*_____
                 Scott A. Bursor

Scott A. Bursor
Joseph I. Marchese
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email:  scott@bursor.com
          jmarchese@bursor.com

**BURSOR & FISHER, P.A.**

Joel D. Smith (admitted *pro hac vice*)
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  jsmith@bursor.com
          fklorczyk@bursor.com

*Interim Class Counsel*