# BURSOR & FISHER
P.A.

**888 SEVENTH AVENUE**
**NEW YORK, NY 10019**
**www.bursor.com**

**SCOTT A. BURSOR**
Tel: **212.989.9113**
Fax: **212.989.9163**
scott@bursor.com

November 19, 2018

**<u>By ECF (redacted version) and Overnight Courier (unredacted version)</u>**

The Honorable Vincent L. Briccetti
U.S. District Court for the Southern District of New York
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY  10601

Re: *In re Welspun Litigation*, Case No. 16-cv-06792-VB

Dear Judge Briccetti:

      I write pursuant to the Court's Individual Practices ¶ 2(B)(i) to request a pre-motion conference on Plaintiffs' anticipated motion to compel Defendant Walmart Stores, Inc. ("Walmart") to produce 1,160 documents improperly withheld on the basis of the attorney-client privilege and/or the work product doctrine. Walmart's privilege claims have been waived due to Walmart's continued failure to serve a privilege log that complies with Local Rule 26.2(a)(2)(A). Judge Sullivan has already ruled that most of Walmart's privilege claims are meritless. *See* 9/21/18 Order, Dkt. No. 188 (after an *in camera* inspection of a subset of the disputed documents, holding that roughly 80% of Walmart's privilege claims were meritless, ordering the production of dozens of withheld documents, and warning that "failure to supply and adequate privilege log can result in waiver of privilege claims"). Walmart's remaining privilege claims which Judge Sullivan has not yet addressed are equally meritless.

      Walmart's current privilege log is five pages long. To comply with the page-limit requirements under the Court's Individual Practices ¶ 1(A)(i), Plaintiffs are deferring submitting the log as an exhibit to this letter. Plaintiffs therefore request permission to file the privilege log separately as an addendum to this letter.

## I.   Introduction And Background

      In April 2018, Walmart served a privilege log that lumped hundreds of documents together in a handful of entries and failed to comply with Local Rule 26.2(a)(2)(A). Initially, the parties focused on certain documents pertaining to a 2008 investigation into Welspun by a company called Grand ISS. Those documents were included in a single line entry of Walmart's privilege log that purported to cover 375 documents, including many concerning Grand ISS, and were misidentified as 2016 documents. When we uncovered this "error" we suspected this was an attempt to disguise the true nature of these documents to make it difficult for Plaintiffs' counsel to recognize that they in fact concerned the 2008 Grand ISS investigation.

      After we challenged the initial log, Walmart served a revised privilege log on May 4, 2018, which continued to lump hundreds of documents together, and continued to violate Local

Rule 26.2(a)(2)(A) by providing scant information supporting the privilege assertions. This second privilege log grouped 62 documents concerning the 2008 Grand ISS investigation into a single entry.

On August 3, 2018, after we had challenged Walmart's second privilege log, Judge Sullivan convened a conference with all parties to discuss outstanding discovery issues and the pending motions to dismiss. During the August 3 conference, Walmart's counsel, Mr. Read, represented to the Court that each of the 62 documents pertaining to the 2008 Grand ISS investigation had a lawyer as a sender, recipient or copyee:

> THE COURT: I think it's hard for me to tell whether or not these are privileged. In other words, what you're saying is – what the defendants are saying, or WalMart is saying, is that some of – all of these documents have some of these attorneys as senders, recipients, or cc's, but, I mean, I have only one of these name, and it might be just a cc, right?
>
> MR. READ: Yes, your Honor.

8/3/18 Hearing Tr. at 53:11-18. Mr. Read's statement to the Court was false. After Plaintiffs' counsel, Mr. Bursor, expressed skepticism of Mr. Read's statement, this exchange occurred:

> MR. BURSOR: I think some of them may have no lawyers on them.
>
> THE COURT: Is that true, some have no attorneys that are either senders –
>
> MR. READ: Your Honor, I don't have –
>
> THE COURT: Wait. Let me finish. Senders, recipients or cc's?
>
> MR. READ: Your Honor, I don't have all the documents in front of me. If a document-by-document privilege log would have resolved this, I wish the plaintiffs would have asked for one and we could have resolved it before coming to court today.

8/3/18 Hearing Tr. at 53:19-54:5. Mr. Read's statement to the Court was misleading. He knew that most of the withheld documents had no lawyers on them because he had already revised the privilege log twice and this issue had been a focus of a dispute between the parties that had been ongoing for months. During an August 16 meet-and-confer call among counsel, when pressed on the absence of any lawyers on these documents, Mr. Read stated that this was not a new development, but was an issue "that came up the moment we saw them."

On August 13, 2018, Walmart produced a third revised privilege log, but it only covered the 62 withheld documents pertaining to the 2008 investigation, which had been lumped together in the first entry of the May 4 log. Judge Sullivan reviewed those 62 documents *in camera* and ruled that <u>Walmart had improperly withheld over 80% of them</u>. 9/21/18 Order at 1.

Although Walmart's privilege assertions are now resolved with respect to the 2008 Grand ISS documents, Walmart never revised its privilege log with respect to the remaining 1,160 documents that it continues to withhold on claims of privilege. We have continued to meet and confer with Walmart's counsel about these deficient privilege logs and meritless privilege claims for months. On September 11, 2018, Walmart's counsel agreed to provide a fourth revised

privilege log for these documents compliant with Local Rule 26.2(a)(2) by October 5. Then by October 19. Then by October 26. Then on October 31, Walmart's counsel stated it would not do so until a Rule 502(d) stipulation was in effect. That stipulation was so-ordered on November 2. *See* Dkt. 197. Still Walmart has not served a fourth revised log.

Respectfully, there should be no more opportunity for a fourth log. Walmart's privilege claims were waived when its initial log failed to comply with Local Rule 26.2(a)(2)(A). Then waived again when Walmart's second log failed to comply with that rule. Then waived a third time when Walmart failed to comply with that rule with respect to the 1,160 documents still being withheld on privilege claims. Having served 3 deficient privilege logs – and now two months past the date it had promised to provide a fourth revised log – it is time to put a stop to this nonsense. We respectfully request that the Court rule that Walmart's privilege claims for the remaining 1,160 documents are waived.

Should the Court not find a waiver and instead delve into the merits of Walmart's privilege claims, they are all meritless.

## II. Walmart's Privilege Assertions Lack Merit

### a. Documents With Third Parties

Five categories of documents involve communications and documents exchanged with third parties Albright Stonebridge Group or Mitchell Communications Group. Log Entry Nos. 2, 4, 7, 8, 10. They are outside public relations consultants that Walmart contends are "qualified third parties." Regardless, "even if inherently related to ongoing litigation, '[c]ase law makes clear that a media campaign is not a litigation strategy.'" *Guiffre v. Maxwell*, 2016 WL 1756918, at *8 (S.D.N.Y. May 2, 2016) (quoting *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 431 (S.D.N.Y. 2013)); *see also Egiazaryan*, 290 F.R.D. at 435.

### b. Documents With A Business Purpose

Walmart's sales of Welspun-made counterfeit Egyptian cotton sheets entailed not only legal problems for Walmart, but also business problems related to its reputation and relationship with Welspun. Walmart is withholding several categories of responsive email or other documents where (1) no attorney is listed, (2) an attorney is listed only as a copyee, or (3) an attorney was just one of many recipients, along with non-attorneys.[1] These documents appear to address business issues concerning investor relations, product labeling, and testing. As a preliminary matter, Judge Sullivan already held in this case that product testing is not privileged when he ordered Target to produce incriminating test results that it improperly withheld on the basis of attorney-work product privilege. *See* Nov. 1, 2017 Order, Dkt. No. 130. Hence, even if the emails in Log Entry No. 5 are privileged, any test results attached to those emails are not.

Further, as to all the documents, "it cannot be said that the primary purpose of the document is to seek legal advice. This is because the response by non-legal personnel by definition cannot be legal and thus the purpose of the request cannot be primarily legal in nature." *Medina v. Buther*, 2018 WL 4383098, at *3 (S.D.N.Y. Aug. 22, 2018); *see also Lyondell-Citgo Ref., LP v. Petroleos de Venezuela, S.A.*, 2004 WL 3019767, at *2 (S.D.N.Y. Dec. 29, 2004) (finding "defendant did not carry its burden of establishing that the documents were attorney-client privileged" "because of the many email recipients who were not attorneys, [and] because of the lack of evidence supporting the contention that the emails contained legal,

---

[1] Log Entry Nos. 9, 14 (no attorney listed); *id.* 5 (attorney merely cc'd); *id.* 5, 13 (attorney one of many recipients).

not business, advice …"). Specifically, categories 9 and 14 do not contain a lawyer at all, categories 5 and 13 contain emails with multiple recipients in addition to attorneys, and the attorneys appear to be mere recipients of these emails.

Additionally, "even if a business decision can be viewed as both business and legal evaluations, the business aspects of the decision are not protected simply because legal considerations are also involved." *Durling v. Papa John's Int'l.*, 2018 WL 557915, at *3 (S.D.N.Y. Jan. 24, 2018) (internal quotation omitted). The documents in categories 5, 9, 13, and 14 either do not involve any lawyers at all or involve a scenario where an attorney was merely a recipient or copyee, and therefore cannot be communications with an attorney or an attempt to seek legal advice.

In any event, the log's descriptions for these categories are too vague and conclusory to permit any determination as to whether the underlying documents were created for a legal rather than business purpose. Because "[t]he distinction between whether the communications in fact concern legal, rather than policy, advice is one that often turns on the specifics of an individual document. … [the Court] require *in camera* review before rendering a decision on whether the attorney-client privilege is properly invoked." *Citizens Union of City of New York v. Attorney Gen. of New York,* 269 F. Supp. 3d 124, 171 (S.D.N.Y. 2017).

### III.   Attachments

Walmart's log fails to provide any detail about the attachments, including the number of attachments, the general subject matter of the attachments, the date those documents were created, and the person who created them, as required by SDNY Local Rule 26.2(a)(2).[2]

Walmart indicates that there are attachments in each of the 14 categories at issue, simply stating "email chain and attachment(s)" in the category description.[3] Given the absence of <u>any</u> detail regarding the nature of attachments in the log, Walmart must be compelled to produce <u>all</u> withheld attachments. "The failure to provide sufficiently descriptive information in a privilege log may result in a finding that the proponent of the privilege has not satisfied its burden. … Each time [Walmart] has revised its privilege log, it 'is essentially a concession that the initial privilege logs were inadequate.'" *Certain Underwriters at Lloyd's v. Nat'l R.R. Passenger Corp.*, 2017 WL 1232526, at *6 (E.D.N.Y. Feb. 17, 2017) (quoting *SEC v. Yorkville Advisors, LLC*, 300 F.R.D 152, 162 (S.D.N.Y. 2014)).

### IV.   Common Interest

Although Walmart does not contend that the "common interest" doctrine extends the attorney-client privilege to communications between it and Welspun, it designates Welspun as a qualified third-party in categories 3, 4, 6, 11, 12, and 14. "It is well-settled that the 'voluntary disclosure of confidential material to a third party waives any applicable attorney-client privilege.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 261 F.R.D. 34, 43 (S.D.N.Y. 2009) (quoting *Schanfield v. Sojitz Corp. of America*, 2009 WL 577659, at *3 (S.D.N.Y. Mar. 6, 2009)). By including Welspun as a third party, Walmart has waived its attorney-client privilege.

In this situation, the only way the communications would potentially be protected is under the common interest doctrine. Although Walmart waived that doctrine, it does not apply anyway. The common interest doctrine applies only where different parties "have <u>an identical</u>

---

[2] Log Entry Nos. 2-15.
[3] *Id.*

legal interest. … The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 520 (S.D.N.Y. 2001) (emphasis added). There also must be "a joint defense effort or strategy [which] has been decided upon and undertaken by the parties and their respective counsel." *U.S. v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017). It does not apply if the withholding party "proffer[s] no agreement with [the third party] demonstrating a common legal strategy." *In re Rivastigmine Patent Litig.*, 2005 WL 2319005, at *5 (S.D.N.Y. Sept. 22, 2005). Walmart does not contend that it has identical interests with Welspun, and Welspun's counsel said that Welspun did not execute a joint defense agreement with anyone.

Equally important, Walmart's position, though contrary to the evidence, is that if fraud occurred, it was duped by Welspun. *See* Dkt. 186 at 4 (claiming Walmart was "surprised by the suggestion of possible false labeling"). Assuming that is true, then the fact that Walmart is positioning itself as a potential victim of Welspun's fraud means that it does not share "common interests" with Welspun. *Cf. U.S. v. Napout*, 2017 WL 980323, at *4 (E.D.N.Y. Mar. 10, 2017) (no common interest between alleged perpetrator of fraud and alleged victim of that fraud). When confronted with evidence of Welspun's fraud, Walmart's 30(b)(6) witness testified ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌" Rader 30(b)(6) Dep. at 201:18-20. She also confirmed ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌" *Id.* at 202:2-24.[4] Walmart's and Welspun's interests in this case clearly are not "identical."

Respectfully submitted,

Scott A. Bursor

cc: All counsel of record (via ECF; unredacted versions sent via email)

---

[4] On November 2, 2018, Plaintiffs' counsel asked Walmart's counsel to de-designate the portions of the deposition testimony cited herein. As of the filing of this letter, Walmart has not done so.