UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                  :

                                  :        **<u>OPINION AND ORDER</u>**

IN RE WELSPUN LITIGATION         :

                                  :        16 CV 6792 (VB)

                                  :
--------------------------------------------------------------x

<u>Briccetti, J.</u>:

       Plaintiffs Harold Brower, Judi Talili, and Ashley Mistler (the "California plaintiffs"), and

Samuel Jividen and Susan Gettings (the "New York plaintiffs"), bring this putative class action

against defendants Welspun India Ltd. ("WIL") and Welspun USA Inc. ("WUSA") (collectively,

the "Welspun Defendants"), and defendants Wal-Mart Stores, Inc. d/b/a Walmart, Bed Bath and

Beyond, Inc. ("BB&B"), and Target Corporation (collectively, the "Retailer Defendants"), for

allegedly distributing, marketing, and selling bed linens falsely labeled "100% Egyptian cotton."

       Plaintiffs bring the following claims:

-    <u>First</u>, the California plaintiffs bring claims individually and on behalf of a
  proposed California subclass against all defendants for violation of (i) California's
  Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 <u>et seq.</u>,
  (ii) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code
  § 17200 <u>et seq.</u>, and (iii) California's False Advertising Law ("FAL"), Cal. Bus.
  & Prof. Code § 17500 <u>et seq.</u>;

-    <u>Second</u>, the California plaintiffs bring claims individually and on behalf of a
  proposed nationwide class against all defendants for (iv) breach of express
  warranty, (v) breach of the implied warranty of merchantability, (vi) unjust
  enrichment, and (vii) violation of the federal Magnuson-Moss Warranty Act
  ("MMWA"), 15 U.S.C. § 2301 <u>et seq.</u>;

-    <u>Third</u>, all plaintiffs bring claims individually and on behalf of a proposed
  nationwide class against all defendants for (viii) negligent misrepresentation and
  (ix) fraud; and

-    <u>Fourth</u>, the New York plaintiffs bring claims individually and on behalf of a
  proposed New York subclass for (x) violation of N.Y. Gen. Bus. Law
  ("NYGBL") §§ 349 & 350.

1

Now pending are (i) the Welspun Defendants' motion to dismiss the consolidated second amended class action complaint ("CSAC") pursuant to Rules 8, 9(b), 12(b)(1), 12(b)(2), and 12(b)(6) (Doc. #182); (ii) the Retailer Defendants' motion to dismiss the CSAC pursuant to Rule 12(b)(6) and to strike class allegations pursuant to Rule 12(f) (Doc. #185); (iii) plaintiffs' request for leave to amend pursuant to Rule 15; and (iv) the Welspun Defendants and Target's accountings for sanctions (Docs. ##172, 174).

For the following reasons, the Welspun Defendants' and Retailer Defendants' motions to dismiss are GRANTED IN PART and DENIED IN PART.  The Retailer Defendants' motion to strike is DENIED.  Plaintiff's request for leave to amend is DENIED.  And the Welspun Defendants' and Target's accountings for sanctions are DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

## BACKGROUND

The following factual background is drawn from the CSAC and the parties' submissions in support of and in opposition to the pending motions.  In deciding the pending motions, the Court accepts as true all well-pleaded factual allegations in the CSAC and draws all reasonable inferences in plaintiffs' favor.

I.    Factual Background

A.    The Welspun Defendants

WIL, based in Mumbai, India, is one of the world's largest textile manufacturers.  It exports more than sixty-eight percent of its production to the United States and supplies textile products to retail stores in New York, including BB&B, Target, and Walmart.

WUSA is a textile company and WIL's wholly owned subsidiary, incorporated in Delaware with its principal place of business in New York.  According to the CSAC, "[WIL] has

publicly described [WUSA] as the 'sales arm' of [WIL], and says that [WUSA's] purpose is to 'look after [WIL's] North American' business."  (Doc. #171 ("CSAC") ¶ 11).

Plaintiffs allege WIL "describes itself []as having two 'corporate headquarters,' one in Mumbai, and the other in New York where [WUSA] is located."  (CSAC ¶ 12).  For instance, according to plaintiffs, WIL's 2016–2017 annual report states WIL maintains a "Corp. HQ/Marketing Office" in New York.  (Id.).  Further, plaintiffs allege WIL reports on WUSA's finances in its own annual reports and guarantees loans to WUSA.

B.    Egyptian Cotton

Plaintiffs allege "Egyptian cotton (i.e., gossypium barbadense cotton grown in Egypt) is considered some of the highest-quality cotton in the world."  (CSAC ¶ 19).  Plaintiffs allege standard cotton uses fibers that are twisted and combined to produce the right length.  But according to plaintiffs, Egypt's climate and Egyptian cultivation methods yield cotton with longer cotton fibers (or staples) than other types of cotton.  Longer fibers mean more uninterrupted fiber to use when making yarn and threads, resulting in fewer splices and a stronger, more durable fabric.  Longer fibers also generate finer yarn, which allows manufacturers to pack more thread into each square inch, resulting in cotton linens with higher thread counts that are "softer and more lustrous than linens made of other types of cotton."  (Id. ¶ 20).  In addition, according to plaintiffs, Egyptian cotton is more porous than regular cotton. That means it absorbs moisture better, making it more comfortable, and absorbs dye better, allowing for richer colors that resist fading longer.

C.    The Bed Linens

Plaintiffs allege the Welspun Defendants manufacture, market, and sell linens that are purportedly "100% Egyptian Cotton" or "100% Long-Staple Egyptian Cotton" in the United

States.  (CSAC ¶ 30).  Allegedly, at least six products with such representations are in fact made with non-Egyptian cotton:  (i) Fieldcrest 500 thread count "100% Long-Staple Egyptian Cotton" bed linens; (ii) Better Homes and Gardens 400 thread count "100% Egyptian Cotton" bed linens; (iii) Canopy 400 thread count damask stripe "100% Egyptian Cotton" bed linens; (iv) Crowning Touch 500 and 800 thread count "100% Egyptian Cotton" bed linens; (v) Perfect Touch 625 thread count "100% Egyptian Cotton" bed linens; and (vi) Royal Velvet 400 thread count "100% Egyptian Cotton" bed linens (collectively, the "Bed Linens").  (Id. ¶ 30).  Plaintiffs allege the Bed Linens are sold online and in retail stores across the United States, including Walmart, BB&B, and Target.

     D.    Retailer Defendants

Plaintiffs allege the Retailer Defendants each contracted with the Welspun Defendants to market and sell the Welspun Defendants' products in the Retailer Defendants' physical and online stores.  However, according to plaintiffs, the Retailer Defendants knew or should have known, before they discontinued sales of the Bed Linens, that the Bed Linens were falsely labeled.

First, plaintiffs allege in 2008, a Walmart employee expressed concern that Welspun was supplying Walmart with fake Egyptian cotton sheets, and that Walmart employees may have been colluding with the Welspun Defendants.  According to the CSAC, Walmart responded by conducting an investigation that exposed "systematic fraud by Welspun," but Walmart "buried the results of that investigation and continued to market, sell, and deliver Welspun products labeled '100% Egyptian Cotton.'"  (CSAC ¶ 48).  Then, in November 2015, "the Cotton Egypt Association warned Walmart that the levels of fraudulent merchandise on offer as Egyptian cotton had reached a crisis point," yet Walmart took no action.  (Id. ¶ 49).  Walmart allegedly

pulled the Welspun Defendants' products from its shelves only after knowledge of the alleged false labeling became public in August 2016.

Second, plaintiffs allege Target began investigating the Welspun Defendants as early as December 2015.  According to plaintiffs, a whistleblower then contacted Target in January 2016 saying "Welspun had asked him or her to falsify invoices to make it appear that Welspun used Egyptian cotton when it did not."  (CSAC ¶ 52).  Plaintiffs allege the whistleblower also disclosed "that Welspun did not purchase enough Egyptian cotton to meet the needs of its retailers [and] had a history of falsifying invoices."  (Id.).

Plaintiffs further allege another employee for one of the Welspun Defendants later told a Target employee in India that "Welspun" used non-Egyptian cotton for Target's products.  (CSAC ¶ 53).  The employee then allegedly stole a trove of incriminating documents and passed the documents to other Target employees.  Nevertheless, plaintiffs allege Target continued to market, sell, and deliver the Bed Linens, and even gave "Welspun" its "Vendor of the Year" award in April 2016.  (Id. ¶ 54).

Third, plaintiffs allege BB&B learned in August 2015 its Perfect Touch and other supposedly Egyptian cotton bed linens were not made with Egyptian cotton, but took no action at that time.  BB&B then allegedly began auditing the Bed Linens on August 24, 2016, but continued to sell the products for another three months while the audit was pending.  According to plaintiffs, however, BB&B knew one month into their audit that "Welspun had no way to show that its Egyptian cotton sheets were really made with Egyptian cotton."  (CSAC ¶ 55).

II.    Procedural History

Plaintiffs filed a consolidated amended class action complaint ("CAC") on February 27, 2017, after which defendants submitted a joint pre-motion letter addressing their anticipated

motions to dismiss and to strike the CAC.  Among other things, the letter identified the CAC's failure to allege any named plaintiff purchased products from Target or Walmart in New York, exposing a potentially fatal flaw in plaintiffs' claims under NYGBL Sections 349 and 350.

On October 13, 2017, the Welspun Defendants moved to dismiss and the Retailer Defendants moved to dismiss and to strike class allegations.  One of defendants' arguments was the CAC failed to allege any named plaintiff purchased products from Target, Walmart, or BB&B in New York.  In opposition to the Retailer Defendants' motion, plaintiffs requested leave to amend the CAC to allow the addition of a New York plaintiff asserting claims against Target and Walmart.

After Defendants' motions were fully briefed, Judge Richard J. Sullivan, to whom this case was previously assigned, ordered plaintiffs to submit a pre-motion letter regarding their request for leave to amend.  Judge Sullivan also ordered defendants, in opposition to plaintiffs' letter, to address the propriety of awarding attorney's fees and costs, pursuant to Rule 11, 28 U.S.C. § 1927, or the Court's inherent equitable powers, for plaintiffs' failure to address the deficiencies raised in defendants' pre-motion to dismiss letter before fully briefing the motions to dismiss.

Judge Sullivan subsequently granted plaintiffs permission to file a consolidated second amended class action complaint.  However, Judge Sullivan also ordered defendants to submit accountings of fees associated with briefing the portions of their motions to dismiss pertaining to the deficiencies defendants had previously raised regarding plaintiffs' NYGBL claims.

Plaintiffs filed the CSAC on August 20, 2018.  Target then requested an award of $41,640.28 in attorney's fees and costs.  The Welspun Defendants requested $9,002.18. Plaintiffs' counsel filed an answering memorandum in opposition to the accountings.

On September 14, 2018, the Welspun Defendants and Retailer Defendants moved to dismiss the CSAC.  The case was subsequently reassigned to the undersigned.

## DISCUSSION

I.    Standard of Review

A.    Rule 12(b)(1)

"[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation omitted).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (internal quotation omitted).  The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

When, as here, the case is at the pleading stage, in deciding a motion to dismiss under Rule 12(b)(1), the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor."  Conyers v. Rossides, 558 F.3d at 143.  But "argumentative inferences favorable to the party asserting jurisdiction should not be drawn."  Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order) (quoting Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992)).  When a factual challenge to the Court's jurisdiction has been raised, "the court may resolve [any] disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits."  Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) (internal citation omitted).  When a defendant moves to dismiss for lack of subject matter

jurisdiction and on other grounds, the court typically should consider the Rule 12(b)(1) challenge first.  Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

B.    Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir. 2003).  Prior to discovery, a plaintiff may defeat a motion to dismiss "by pleading in good faith legally sufficient allegations of jurisdiction."  Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990) (internal citation omitted).  However, when, as here, a plaintiff has engaged in jurisdictional discovery, but no evidentiary hearing was conducted, "the plaintiff's prima facie showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant."  In re Magnetic Audiotape Antitrust Litig., 334 F.3d at 206 (internal quotation and alteration removed).  When there has been no hearing on the merits, "all pleadings and affidavits must be construed in the light most favorable to [the plaintiff,] and all doubts must be resolved in the . . . plaintiff's favor."  Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).

As this is a diversity action, the Court must "resolve the question of personal jurisdiction with reference to New York law, the forum in which the district court sits."  Ash v. Richards, 572 F. App'x 52, 53 (2d Cir. 2014) (summary order).  Moreover, when a defendant moves to dismiss under Rules 12(b)(2) and 12(b)(6), the court must resolve the Rule 12(b)(2) motion first. See Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963); Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 224 (S.D.N.Y. 2013).

C.    Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion for failure to state a claim, the Court evaluates the

sufficiency of the operative complaint under the "two-pronged approach" articulated by the U.S.

Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  First, plaintiffs' legal

conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to

withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v.

Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of

"plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544,

564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

D.    Rule 12(f)

Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "Motions to

strike are generally looked upon with disfavor."  Chenensky v. N.Y. Life Ins. Co., 2011 WL

1795305, at *1 (S.D.N.Y. Apr. 27, 2011) (internal quotation and citation omitted).  Motions to

strike class allegations are "even more disfavored" because they seek "to preemptively terminate

9

the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before

plaintiffs are permitted to complete the [class certification] discovery to which they would

otherwise be entitled."  Id. (alteration and internal quotation omitted).  Thus, unless a motion to

strike class allegations "addresses issues separate and apart from the issues that will be decided

on a class certification motion," the motion should be denied as premature.  Chen-Oster v.

Goldman, Sachs & Co., 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (internal quotation omitted).

     E.    Rule 8

Rule 8(a)(2) requires "[a] pleading that states a claim for relief" to contain "a short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  Dismissal pursuant to Rule 8 "is usually reserved for those cases in which the complaint

is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is

well disguised."  Wynder v. McMahon, 360 F.3d 73, 80 (2d Cir. 2004) (quoting Salahuddin v.

Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)).

     F.    Sanctions

"A district court has inherent power to award attorneys' fees against the offending party

and his attorney when it determines a party has acted in bad faith, vexatiously, wantonly, or for

oppressive reasons."  Agee v. Paramount Commc'ns, Inc., 114 F.3d 395, 398 (2d Cir. 1997)

(internal quotation omitted).  "Similarly, under 28 U.S.C. § 1927, the court may require

any attorney to pay costs if he or she 'so multiplies the proceedings in any case unreasonably and

vexatiously.'"  Id.  "To impose sanctions under either authority, the trial court must find clear

evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for

improper purposes."  Id.

Rule 11 permits sanctions if a party presents "[a] pleading, motion, or other paper" that "has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." United States v. Int'l Bhd. of Teamsters, 948 F.2d 1338, 1344 (2d Cir. 1991) (internal quotation, citations, and emphasis omitted). Courts have broad discretion in determining whether to impose sanctions under Rule 11. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 407 (1990). "In deciding whether the signer of a pleading, motion, or other paper has crossed the line between zealous advocacy and plain pettifoggery, the court applies an objective standard of reasonableness." United States v. Int'l Bhd. of Teamsters, 948 F.2d at 1344 (citing Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 549–50 (1991)).

II.   Injunctive Relief

Plaintiffs lack standing to sue for injunctive relief.

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance." Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 48 (2d Cir. 2014) (internal citation omitted). To establish standing in federal court, a litigant must demonstrate, among other things, he or she has suffered an injury. Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998). "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." Peck v. Baldwinsville Cent. Sch. Dist., 351 F. App'x 477, 479 (2d Cir. 2009) (summary order) (quoting Deshawn E. by Charlotte E. v. Safir, 156 F.3d at 344). Thus, a plaintiff who concedes she is no longer likely to purchase a product because she knows of a defendant's alleged deception and false advertising does not

11

have standing to enjoin the defendant's sales practices.  See Kommer v. Bayer Consumer Health,
710 F. App'x 43, 44 (2d Cir. 2018) (summary order).

Plaintiffs concede that they would not have purchased the Bed Linens had they known
the products were not made from "100 Egyptian Cotton" or "100% Long-Staple Egyptian
Cotton."  (See, e.g., CSAC ¶¶ 74).  Nor do plaintiffs allege they intend to purchase the Bed
Linens in the future.  Therefore, plaintiffs cannot show a likelihood of future injury.

Accordingly, plaintiffs' claims for injunctive relief must be dismissed.

III.    Personal Jurisdiction

The Welspun Defendants argue plaintiffs fail to establish personal jurisdiction over non-
domiciliary defendant WIL.

The Court agrees only as to the California plaintiffs' claims against WIL.  As to all other
claims against WIL, the Court either finds it has specific personal jurisdiction or defers
resolution until a motion for class certification.

The Court first analyzes whether WUSA acted as WIL's agent for purposes of personal
jurisdiction, and therefore whether the Court may consider WUSA's contacts with the forum
when determining whether to exercise personal jurisdiction over WIL.  Then, to determine
whether personal jurisdiction exists over WIL, the Court engages in a two-step inquiry.  Chloe v.
Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010) (citation omitted).  First, the
Court determines whether the forum state's law permits the exercise of jurisdiction over the
defendant.  Id.  "[T]he second step is to analyze whether personal jurisdiction comports with the
Due Process Clause of the United States Constitution."  Id. at 164.

A.      Agency

Plaintiffs aver facts that, if credited, would establish that WUSA acted as WIL's agent for purposes of personal jurisdiction.

"To establish an agency relationship for purposes of personal jurisdiction, a plaintiff must show that the alleged agent acts for the benefit of, and with the knowledge and consent of, the non-resident principal, and over which that principal exercises some control." GEM Advisors, Inc. v. Corporacion Sidenor, S.A., 667 F. Supp. 2d 308, 318 (S.D.N.Y. 2009) (internal quotation omitted).  "In determining if an agency relationship exists for purposes of personal jurisdiction, a court should analyze the realities of the relationship in question rather than the formalities of agency law." Id. (internal quotation and citation omitted).  A plaintiff need not demonstrate either a formal agency agreement or that the defendant exercised direct control over its putative agent. Klonis v. Nat'l Bank of Greece, S.A., 492 F. Supp. 2d 293, 301 (S.D.N.Y. 2007).

"To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary 'does all the business which [the parent corporation] could do were it here by its own officials.'" Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998) (quoting Frummer v. Hilton Hotels Int'l, Inc., 19 N.Y.2d 533, 537 (1967)).

> This 'means that a foreign corporation is doing business in New York when its New York representative provides services beyond mere solicitation and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar activities.'

Klonis v. Nat'l Bank of Greece, S.A., 492 F. Supp. 2d at 301 (quoting Gelfand v. Tanner Motor Tours, Ltd., 385 F.3d 116, 121 (2d Cir. 1967) (alterations omitted)).  When "the alleged reason for the subsidiary's existence is to perform services in furtherance of its parent's business that would otherwise have to be performed by the parent, there seems to be little question that the

subsidiary is acting as the parent's agent—even if it performs other tasks as well." <u>Yousef v. Al Jazeera Media Network</u>, 2018 WL 1665239, at *11 (S.D.N.Y. Mar. 22, 2018).

Here, crediting the evidence plaintiffs have produced at this early stage of the case and construing the facts in the light most favorable to plaintiff, the Court finds that if not for WUSA, WIL would perform substantially similar services, including importing goods into New York and selling goods to third-party retailers who in turn sell WIL's goods in the United States.  In particular, plaintiffs have produced evidence that WUSA has described itself as "the sales, marketing and distribution arm for Welspun's textile business."  (Doc. #189 ("Klorczyk Decl.") Ex. 7 at WS106645).[1]  Similarly, WIL's 2011–2012 annual report states, "WIL has subsidiaries based out of New York in USA . . . to look after its North American . . . business[]."  (Doc. #187 ("Jiwani Decl.") Ex. C at ECF 6).

In a letter to U.S. Customs and Border Protection, WUSA lays out the entities' joint structure:  WIL is the manufacturer, Welspun Global Brands Limited ("WGBL") the middleman, and WUSA the marketer and wholesaler.  (<u>See</u> Klorczyk Decl. Ex. 8 at WS127362–67).  Similarly, in a prospective licensee questionnaire, WUSA states WIL, WGBL, and WUSA comprise "a vertically integrated manufacturer" of products including bed sheets.  (<u>Id</u>. Ex. 7 at WS106646).  And in the letter to U.S. Customers and Border Protection, WUSA states it imports merchandise for both WGBL and WIL.  (<u>Id</u>. Ex. 8 at WS127362).

Further, at this stage, plaintiffs' evidence adequately shows WIL treated WUSA's New York office like its own.  One Target witness testified WIL employees told him they had offices in New York, where WUSA was located.  Plaintiffs also produced an email from WIL's CEO

---

[1]     Unless otherwise noted, "Ex. # __ at WS__" refers to the Bates-stamped numbers on the bottom of plaintiffs' exhibits, and "Doc. # __ at ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

and Joint Managing Director referring to "our New York office" (Klorczyk Decl. Ex. 5 at WS056196) and a WIL PowerPoint presentation doing the same (id. Ex. 6 at WS028871).

At this stage, plaintiffs' evidence also adequately shows the Retailer Defendants treated WUSA as WIL's agent. A Rule 30(b)(6) witness for Walmart testified: "Welspun India and Welspun U.S., although they are two separate companies, for Walmart, we work with them like they are one company." (Klorczyk Decl. Ex. 2 at 13). A Rule 30(b)(6) witness for Target similarly testified Target considered WUSA and WIL to be "one entity." (Id. Ex. 3 at 49). Moreover, witnesses for both Walmart and Target testified representatives from the Welspun Defendants referred to their employers as "Welspun" without specifying WUSA or WIL. (Id. Ex. 2 at 13–14; Ex. 3 at 52).

WIL argues imputing WUSA's ties with New York to WIL would violate the corporate separateness doctrine that applies when a litigant seeks to pierce the corporate veil. The Court disagrees. "Establishing the exercise of personal jurisdiction over an alleged alter ego requires application of a less stringent standard than that necessary to pierce the corporate veil for purposes of liability." GEM Advisors, Inc. v. Corporacion Sidenor, S.A., 667 F. Supp. 2d at 319.

Therefore, plaintiffs have produced sufficient evidence that, if credited, would show WUSA acted as WIL's agent for purposes of personal jurisdiction.

B.    New York's Long-Arm Statute

Moreover, the New York plaintiffs have averred facts that, if credited, would satisfy New York's Long Arm statute for purposes of their claims against WIL.[2]

---

[2]    Because the Court finds infra that the exercise of personal jurisdiction over the California plaintiffs would not comport with due process, the Court analyzes here only whether New York's long-arm statute is satisfied for purposes of the New York plaintiffs' claims against WIL.

"CPLR § 302 is New York's 'long-arm' statute permitting jurisdiction over an out-of-state defendant."  Bidonthecity.com LLC v. Halverston Holdings Ltd., 2014 WL 1331046, at *3 (S.D.N.Y. Mar. 31, 2014) (internal citations omitted).  Section 302(a)(1) provides, "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, . . . who in person or through an agent[,] transacts any business within the state."  N.Y. C.P.L.R. § 302(a)(1).  "To establish personal jurisdiction under section 302(a)(1), two requirements must be met:  (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  Eades v. Kennedy, PC Law Offices, 799 F.3d 161, 168 (2d Cir. 2015) (internal quotation omitted).  "There can be no doubt" a company transacts business in New York when it is headquartered in and rents facilities to carry on its operations in the state.  Yousef v. Al Jazeera Media Network, 2018 WL 1665239, at *13.

As for the second requirement, "a claim arises from a particular transaction when there is some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted."  Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006) (internal quotations and alteration omitted).  "A connection that is 'merely coincidental' is insufficient to support jurisdiction."  Id. (quoting Johnson v. Ward, 4 N.Y.2d 516, 520 (2005)).  The inquiry is fact-specific.  Id.

WIL transacted business in New York, satisfying Section 302(a)(1)'s first requirement.  According to plaintiffs, WUSA's principal place of business is in New York and maintained an office there.  Moreover, as discussed above, the Court imputes WUSA's contacts to WIL because WUSA acted as WIL's agent for purposes of personal jurisdiction over WIL.

16

Further, the New York plaintiffs' claims arise from WIL's business activity in New York, satisfying Section 302(a)(1)'s second requirement.  As noted above, plaintiffs have produced evidence that WUSA, which is headquartered in New York, has described itself as "the sales, marketing and distribution arm for Welspun's textile business," from which the New York plaintiffs' claims arise.  (Klorczyk Decl. Ex. 7 at WS106645).  Moreover, the New York plaintiffs allege they purchased Bed Linens from the Retailer Defendants in New York.  Therefore, there is an articulable nexus between WIL's business and the New York plaintiffs' claims against WIL.

Accordingly, plaintiffs have produced evidence that, if credited, would establish personal jurisdiction over the New York plaintiffs' claims against WIL under Section 302(a)(1).

C.     Due Process

The Court now turns to whether exercising personal jurisdiction would comport with due process.  The Court concludes it (i) lacks general jurisdiction over WIL; (ii) has specific jurisdiction over the New York plaintiffs' claims against WIL; and (iii) lacks specific jurisdiction over the California plaintiffs' claims against WIL.  In addition, the Court defers decision on whether it may exercise specific personal jurisdiction over unnamed class members' out-of-state claims until a motion for class certification.

"[T]o satisfy the Due Process Clause of the United States Constitution, the exercise of long-arm jurisdiction by New York must be based on defendants' 'minimum contacts' with the state and must comport with 'traditional notions of fair play and substantial justice.'"  Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 32 (2d Cir. 1996) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  A court may exercise two types of jurisdiction, differentiated by the kind of minimum contacts the defendant has had with the

17

forum state.  "These are specific (also called 'case-linked') jurisdiction and general (or 'all-purpose') jurisdiction."  Brown v. Lockheed Martin Corp., 814 F.3d 619, 624 (2d Cir. 2016).

The Court addresses each in turn.

          1.     General Jurisdiction Over WIL

The Court's exercise of general jurisdiction over WIL would not comport with due process.

"A court may assert general jurisdiction over [a] foreign (sister-state or foreign-country) corporation[] to hear any and all claims against [the corporation] when [the corporation's] affiliations with the State . . . render [it] essentially at home in the forum State."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011).  "[T]he general jurisdiction inquiry 'is not whether a foreign corporation's in-forum contacts can be said to be in some sense continuous and systematic,' but rather . . . 'whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum.'"  Brown v. Lockheed Martin Corp., 814 F.3d at 627 (quoting Daimler AG v. Bauman, 134 S. Ct. 746, 761 (2014) [hereinafter Daimler]).  A corporation is "essentially at home" in its state of incorporation and the state of its principal place of business.  Daimler, 134 S. Ct. 760–61.  Only in a "truly exceptional case" may a corporate defendant be treated as "essentially at home" in a jurisdiction besides its states of incorporation and principal place of business.  Brown v. Lockheed Martin Corp., 814 F.3d at 627 (internal quotation marks omitted).  In addition, an agent's contacts with a forum state, even if imputed to the principal company, do not allow a court to exercise general jurisdiction over the principal company unless they render the principal company essentially at home in the forum state.  See Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 226 (2d Cir. 2014) (holding principal company not essentially at home in New York because even if

agents' contacts were imputed to the principal company, "they do not shift the company's primary place of business (or place of incorporation) away from Turkey.").

This is not an exceptional case.  WIL is incorporated and has its principal place of business in India.  According to WIL's CFO, WIL has "seven direct subsidiaries in India and 13 indirect subsidiaries located in six other countries."  (Jiwani Decl. ¶ 19).  Moreover, WIL's CFO states WIL's top managers are Indian nationals who work primarily in India; WIL's stock trades on the Bombay Stock Exchange and the National Stock Exchange of India; all members of WIL's board of directors are Indian nationals who reside in India; WIL's board of directors meets in Mumbai; WIL's annual shareholder meetings are in Gujarat, India; WIL's factories are all located in India; all of WIL's products are manufactured in India; and as of the third quarter of 2016, WIL had approximately 22,000 employees, all of whom were employed in India.  Moreover, despite the fact that WUSA has extensive contacts with New York, those contacts "do not shift [WIL]'s primary place of business (or place of incorporation) away from" India.  Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d at 226.

Therefore, WIL is essentially at home in India, not New York, and the Court's exercise of general jurisdiction over WIL would not comport with due process.

> 2.    Specific Jurisdiction over the New York Plaintiffs' Claims

The Court's exercise of specific jurisdiction over the New York plaintiffs' claims against WIL, however, does comport with due process pursuant to a stream of commerce theory of specific jurisdiction.

Specific jurisdiction over a nonresident defendant satisfies due process when:  "(1) the defendant has 'purposefully availed itself of the privilege of conducting activities within the forum State'; (2) the claim at issue 'arises out of or relates to the defendant's forum conduct';

and (3) the exercise of jurisdiction is 'reasonable under the circumstances.'" Ramiro Aviles v. S & P Glob., Inc., 2019 WL 1407473, at *16 (S.D.N.Y. Mar. 28, 2019) (quoting U.S. Bank Nat'l Ass'n v. Bank of Am. N.A., 916 F.3d 143, 150 (2d Cir. 2019)).[3]

Under a stream of commerce theory of specific jurisdiction, a plaintiff must show a "regular flow or regular course of sales" in the forum state or other purposeful activity directed there, such as "special state-related design, advertising, advice, marketing," or regular attendance at trade shows in the forum state. See J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 889 (2011) (Breyer, J., concurring) (internal quotations and alterations omitted). "Courts have considered 'an expectation of true national distribution' of the products at issue to suggest an expectation that the product in question (or other products) would enter the forum state's stream of commerce." Melissa & Doug, LLC v. LTD Commodities, LLC, 2016 WL 4367975, at *4 (S.D.N.Y. Aug. 15, 2016) (internal citations omitted). In addition, "establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State" also "may indicate an intent or purpose to serve the market in the forum State." Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987).

The Supreme Court has cast doubt on the continued viability of specific jurisdiction based on a product's placement into the forum state's stream of commerce. See J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. at 886 (Kennedy, J., plurality opinion) (finding defendant had not "availed itself" of New Jersey's market simply because defendant directed sales and marketing efforts at the United States and four of its products entered New Jersey's stream of

---

[3]     The Welspun Defendants do not challenge whether the exercise of jurisdiction over the New York plaintiffs' claims is reasonable under the circumstances.

commerce); Asahi Metal Indus. Co. v. Superior Court, 480 U.S. at 112 (O'Connor, J., plurality

opinion) ("The placement of a product into the stream of commerce, without more, is not an act

of the defendant purposefully directed toward the forum State.").  Nevertheless, the stream of

commerce theory survives.  See, e.g., AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358,

1363 (Fed. Cir. 2012) (holding "because [J. McIntyre Mach., Ltd. v. Nicastro] did not produce a

majority opinion," courts must follow Justice Breyer's concurrence, "the crux of [which] was

that the Supreme Court's framework applying the stream-of-commerce theory . . . had not

changed").

Here, there is sufficient evidence to conclude at this stage that WIL expected true

national distribution of the Bed Linens.  WIL's 2016–2017 annual report states WIL, India's

"largest exporter of home textile products," was "[r]anked #1 in Home Textile Supplier Giants to

USA by Home & Textiles Today magazine for the 5th Year in a row."  (Jiwani Decl. Ex. A at

ECF 4–5).  The annual report further states that "every 5th towel and every 9th bedsheet sold in

the US is manufactured by [WIL]."  (Id.).  Similarly, WIL's 2011–2012 annual report states

"nearly 70% of WIL revenues come from the US markets," down from the "nearly 90% of

business coming from the US nearly a decade ago." (Id. Ex. C at ECF 6).

Plaintiffs' evidence regarding the size of the New York market also supports this

conclusion.  Plaintiffs aver Walmart and BB&B each have approximately 100 stores in New

York and Target has seventy-nine.  Plaintiffs also filed evidence under seal showing significant

Walmart sales of Welspun products in New York.

Other evidence further supports finding WIL purposely availed itself of the privilege of

conducting business in New York.  WUSA—WIL's subsidiary and allegedly "the sales,

marketing and distribution arm for Welspun's textile business" (Klorczyk Decl. Ex. 7 at

WS106645)—had its principal place of business and an office in New York that, at least at this

stage of the case, the Court finds WIL treated as its own.  Further, plaintiffs produced evidence

that WUSA shipped goods into New York on WIL's behalf, and that WIL representatives

attended New York's Home Fashions Market Week in 2016.

   Accordingly, plaintiffs have produced sufficient evidence that, if credited, would satisfy

due process for purposes of establishing specific jurisdiction over the New York plaintiffs'

claims against WIL.

        3.      Specific Jurisdiction over the California Plaintiffs' Claims

However, pursuant to the Supreme Court's decision in Bristol-Myers Squibb Co. v.

Superior Court of Cal., S.F. Cty., 137 S. Ct. 1773 (2017) [hereinafter Bristol-Myers], the Court

lacks specific jurisdiction over the California plaintiffs' claims against WIL.

In Bristol-Myers, a state-court mass tort action with more than 600 named plaintiffs, the

Court explained:

> for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation
> between the forum and the underlying controversy, principally, [an] activity or an
> occurrence that takes place in the forum State.'  When there is no such connection,
> specific jurisdiction is lacking regardless of the extent of a defendant's unconnected
> activities in the State.

137 S. Ct. at 1781 (alteration in original) (quoting Goodyear Dunlop Tires Operations, S.A. v.

Brown, 564 U.S. at 919)).  Emphasizing that specific jurisdiction requires "the suit [to] arise out

of or relate to the defendant's contacts with the forum," id. at 1780 (alterations omitted) (quoting

Daimler, 571 U.S. 117) (citations omitted), the Court found the California courts lacked specific

jurisdiction over named plaintiffs foreign to California who had not alleged any injury there, see

id. at 1782.

The Bristol-Myers Court explicitly left open the question whether the Fifth Amendment

imposed the same restrictions on the exercise of personal jurisdiction by a federal court.  See

Bristol-Myers, 137 S. Ct. at 1784.[4]  Moreover, although most district courts have held Bristol-Myers does not apply to federal class actions, Bank v. CreditGuard of Am., 2019 WL 1316966, at *12 n.11 (E.D.N.Y. Mar. 22, 2019), reconsideration denied sub nom. Bank v. Freedom Debt Relief, LLC, 2019 WL 1865196 (E.D.N.Y. Apr. 24, 2019), several courts have deferred resolution of Bristol-Myers' applicability to unnamed class members' claims until a motion for class certification, see, e.g., Gonzalez v. Costco Wholesale Corp., 2018 WL 4783962, at *8 (E.D.N.Y. Sept. 29, 2018).

The California plaintiffs did not purchase any of the Bed Linens in New York.  They therefore rely on WIL's contacts with New York through WUSA, which plaintiffs allege maintains its headquarters in New York and functions as WIL's sales, marketing, and distribution arm in the United States.  But "[f]or specific jurisdiction, a defendant's general connections with the forum are not enough."  Bristol-Myers, 137 S. Ct. at 1781.  Thus, because the California plaintiffs' claims do not arise from WIL's contacts with New York, the Court lacks personal jurisdiction over the California plaintiffs' claims against WIL.

Bristol-Myers' applicability to the New York plaintiffs' out-of-state class action claims, however, is less clear.  Accordingly, the Court defers resolution of Bristol-Myers' applicability to the New York plaintiffs' out-of-state class action claims until plaintiffs move for class certification.

---

[4]     In leaving open that question, the Bristol-Myers Court relied on Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 102 n.5 (1987).  In that case, the Supreme Court stated it had no occasion to address whether a "federal court could exercise personal jurisdiction, consistent with the Fifth Amendment, based on an aggregation of the defendant's contacts with the Nation as a whole, rather than on its contacts with the State in which the federal court sits."  Id.  Here, plaintiffs have not argued that they can aggregate their nationwide contacts to satisfy personal jurisdiction.  Therefore, the Court does not address whether the California plaintiffs could satisfy personal jurisdiction in federal court under an aggregation theory.

D.    Pendent Jurisdiction

Plaintiffs argue the Court should exercise pendent personal jurisdiction over the California plaintiffs' claims against WIL.

Pendent jurisdiction is not applicable in these circumstances.

"Pendent jurisdiction traditionally refers to the joinder of a state-law claim by a party already presenting a federal question claim against the same defendant."  Baylis v. Marriott Corp., 843 F.2d 658, 663–64 (2d Cir. 1988) (internal citation omitted).  "[W]here a federal statute authorizes nationwide service of process, and the federal and state claims 'derive from a common nucleus of operative fact,' . . . the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available."  Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 88 (2d Cir. 2018) (quoting IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1056 (2d Cir. 1993)).

Plaintiffs have not brought a claim under a federal statute authorizing nationwide service of process.   Nor is a non-traditional application of pendent jurisdiction appropriate here.   See, e.g., DeMaria v. Nissan N. Am., Inc., 2016 WL 374145, at *8 (N.D. Ill. Feb. 1, 2016) (application of pendent jurisdiction inappropriate "where each plaintiff's claim is predicated on the law of the particular state where he or she purchased a car and the claims of the other plaintiffs as alleged remain unrelated to anything that transpired in Illinois"); Tulsa Cancer Inst., PLLC v. Genetech Inc., 2016 WL 141859, at *4 (N.D. Okla. Jan. 12, 2016) ("The doctrine of pendent personal jurisdiction does not negate Plaintiffs' obligation to establish jurisdiction based on the relationship between Defendant, the forum, and each Plaintiff's claims.").

Therefore, the Court will not exercise pendent jurisdiction over the California plaintiffs' claims against WIL.

E.      Conclusion

In sum, the Court has specific jurisdiction over the New York plaintiffs' claims against WIL, lacks jurisdiction over the California plaintiffs' claims against WIL, and defers resolution of Bristol-Myers' applicability to the New York plaintiffs' out-of-state class action claims until plaintiffs move for class certification.

IV.     Failure to State a Claim

The Court now assesses defendants' challenges to several of the CSAC's claims for relief.

For the following reasons, the Court will allow the California plaintiffs' claims against WUSA and the Retailer Defendants for unjust enrichment, negligent misrepresentation, and for violation of the UCL, CLRA, and FAL, to proceed.  However, the following claims are dismissed:  (i) the California plaintiffs' claims for implied warranty against WUSA and the Retailer Defendants; (ii) the New York plaintiffs' claims for negligent misrepresentation against all defendants; (iii) all plaintiffs' claims for violation of the MMWA against all defendants; and (iv) all plaintiffs' claims for fraud against the Retailer Defendants.

A.      Implied Warranty

The Welspun Defendants argue the California plaintiffs' implied warranty claims under California law fail because the California plaintiffs fail to allege privity.

The Court agrees.

"Under California Commercial Code section 2314, . . . a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant."  Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008).  "One exception to the general rule is where 'the purchaser of a product relied on representations made by the manufacturer in labels

or advertising material.'"  <u>Allen v. Hyland's Inc.</u>, 300 F.R.D. 643, 669 (C.D. Cal. 2014) (quoting <u>Clemens v. DaimlerChrysler Corp.</u>, 534 F.3d at 1023).  Although the Ninth Circuit implied in <u>Clemens v. DaimlerChrysler Corp.</u> that this exception to the privity requirement extends to claims for breach of implied warranty, 547 F.2d at 1023, it relied on <u>Burr v. Sherwin Williams Co.</u>, in which the California Supreme Court held the exception was "applicable only to express warranties."  42 Cal. 2d 682, 696 (1954).  Courts that have noted this discrepancy have held the privity exception is limited to claims for breach of the express warranty.  <u>See</u>, <u>e.g.</u>, <u>Hilsley v. Ocean Spray Cranberries, Inc.</u>, 2018 WL 6300479, at *11 n.8 (S.D. Cal. Nov. 29, 2018).

The Court agrees that California's privity exception for claims based on label or advertising misrepresentations applies only to claims for breach of express warranty.  Thus, because plaintiffs do not allege privity with the Welspun Defendants, their claim for breach of implied warranty under California law fails.

Accordingly, the California plaintiffs' claims for breach of implied warranty under California law against the Welspun Defendants are dismissed.

B.     <u>Unjust Enrichment</u>

Defendants argue the California plaintiffs' unjust enrichment claims under California law fail because California does not recognize unjust enrichment as a standalone claim for relief.

The Court disagrees.

California courts generally do not recognize a standalone claim for unjust enrichment, "which is synonymous with 'restitution.'"  <u>Astiana v. Hain Celestial Group, Inc.</u>, 783 F.3d 753, 762 (9th Cir. 2015) (quoting <u>Durell v. Sharp Healthcare</u>, 183 Cal. App. 4th 1350, 1370 (2010) (citation omitted)).  However, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'"  <u>Id.</u> (quoting

26

Rutherford Holdings, LLC v. Plaza Del Ray, 223 Cal. App. 4th 221 (2014)).  Thus, in Astiana v. Hain Celestial Group, Inc., the Ninth Circuit held an allegation that a defendant "enticed plaintiffs to purchase their products through false and misleading labeling, and that [the defendant] was unjustly enriched as a result," sufficed to state a quasi-contract cause of action. 783 F.3d at 762 (internal quotations and alteration omitted).  Further, to the extent plaintiffs' restitution claim is duplicative or superfluous, "this is not grounds for dismissal."  Id. (citing Fed. R. Civ. P. 8(d)(2)).  Courts have since "permitted what were previously considered to be superfluous unjust enrichment claims to survive the pleading stage in light of the Ninth Circuit's decision in Astiana."  Valencia v. Volkswagen Grp. of Am. Inc., 119 F. Supp. 3d 1130, 1142 (N.D. Cal. 2015) (collecting cases).

Here, the California plaintiffs allege defendants misrepresented the Bed Linens were "100% Egyptian Cotton" or "100% Long-Staple Egyptian Cotton," and that defendants were unjustly enriched as a result.  Although the California plaintiffs' restitution claims may be duplicative or superfluous, the Court will not dismiss the claims for that reason at this time.

Accordingly, the California plaintiffs' unjust enrichment claims under California law may proceed.

C.    Negligent Misrepresentation

Defendants argue plaintiffs fail to state claims for negligent misrepresentation under New York or California law because plaintiffs fail to allege a special relationship between plaintiffs and defendants.

Plaintiffs do not oppose dismissal of the New York negligent misrepresentation claims, and therefore the Court dismisses them.  See M.M. ex rel. J.M. v. N.Y.C. Dep't of Educ., 2010 WL 2985477, at *6 (S.D.N.Y. July 27, 2010) (collecting cases).  However, the Court will not

dismiss plaintiffs' negligent misrepresentation claims under California law because California's economic loss rule—upon which defendants rely in arguing for dismissal—does not apply to those claims.

"In actions for negligence in California, recovery of purely economic loss is foreclosed in the absence of '(1) personal injury, (2) physical damage to property, (3) a special relationship existing between the parties, or (4) some other common law exception to the rule.'" Minkler v. Apple, Inc., 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014) (quoting Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc., 315 F. App'x 603, 605 (9th Cir. 2008) (non-precedential memorandum)). This "economic loss rule requires a purchaser to recover in contract," not in tort, "for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 988 (2004); see also Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc., 2016 WL 3519294, at *4 (E.D. Cal. June 27, 2016).

Courts are split regarding whether California's economic loss rule applies to negligent misrepresentation claims. See Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc., 2016 WL 3519294, at *5 (collecting cases). However, the Ninth Circuit held—albeit in a non-precedential memorandum—that "California law classifies negligent misrepresentation as a species of fraud, for which economic loss is recoverable." Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc., 315 F. App'x at 607 (internal citations omitted). Moreover, some courts have noted the difference between breach of contract claims based on conduct after formation of the contract and negligent misrepresentation claims based on pre-contract conduct. See, e.g., Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc., 2016 WL 3519294, at *5.

In light of the Ninth Circuit's non-precedential memorandum and the district court's persuasive reasoning in Bret Harte Union High Sch. Dist. v. FieldTurf, USA, Inc., 2016 WL 3519294, the Court holds California's economic loss rule does not apply to plaintiffs' negligent misrepresentation claims.

Accordingly, the New York plaintiffs' negligent misrepresentation claims are dismissed, but the California plaintiffs' negligent misrepresentation claims may proceed.

D.    Fraud-Based Claims

The Welspun Defendants argue plaintiffs' CLRA, UCL, FAL, negligent misrepresentation, and fraud claims fail to satisfy Rule 9(b)'s particularity requirement because the CSAC fails to explain how the Bed Linens' "100% Egyptian cotton" labels were false. Further, the Retailer Defendants argue plaintiffs' UCL, CLRA, FAL, negligent misrepresentation, and fraud claims against them should be dismissed because plaintiffs fail to plead the Retailer Defendants' fraudulent intent.

The Court disagrees with the Welspun Defendants because plaintiffs adequately explain how the "100% Egyptian cotton" labels were false. Moreover, the Court finds plaintiffs need not allege scienter to state claims under the UCL, CLRA, FAL, or for negligent misrepresentation. However, plaintiffs fail to raise a strong inference of fraudulent intent on their fraud claims against the Retailer Defendants, and therefore those claims are dismissed.

"Under New York law, fraud requires proof of (1) a material misrepresentation or omission of a fact, (2) knowledge of that fact's falsity, (3) an intent to induce reliance, (4) justifiable reliance by the plaintiff, and (5) damages." Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 170 (2d Cir. 2015) (internal citations omitted) [hereinafter Loreley]. Similarly, "[t]he elements of a cause of action for fraud in California are: '(a)

misrepresentation (false representation, concealment, or <u>nondisclosure</u>); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting <u>Engalla v. Permanente Med. Grp., Inc.</u>, 15 Cal. 4th 951, 974 (1997)).  Rule 9(b) imposes two additional pleading burdens on fraud plaintiffs—one concerning the circumstances of the fraud and the other the defendant's mental state.  <u>Loreley</u>, 797 F.3d at 171.

First, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Thus, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d 273, 290 (2d Cir. 2006).  That said, the rule "does not require factual pleadings that demonstrate the <u>probability</u> of wrongdoing."  <u>Loreley</u>, 797 F.3d at 174 (alteration omitted) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678)).  "At the pleadings stage, the alleged fraud need only be <u>plausible</u> based on the complaint; it need not be more likely than other possibilities."  <u>Id</u>. (citing <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. at 556).

Second, "though mental states may be pleaded generally, [a plaintiff] must nonetheless allege facts that give rise to a strong inference of fraudulent intent."  <u>Loreley</u>, 797 F.3d at 171 (internal quotations omitted).  "An inference is strong if it is cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  <u>Id</u>. at 176–77 (internal quotations omitted).  Such an inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  <u>Lerner v. Fleet Bank, N.A.</u>, 459 F.3d at 290–91 (internal quotation omitted).

"Generalized motives, such as the desire to earn profits, which could be imputed to any publicly-owned, for-profit endeavor, are not sufficiently concrete for purposes of inferring scienter." In re Lyman Good Dietary Supplements Litig., 2018 WL 3733949, at *4 (S.D.N.Y. Aug. 6, 2018) (alteration removed) (quoting Chill v. Gen. Elec. Co., 101 F.3d 263, 268 (2d Cir. 1996)). Further, ordering an investigation is "a prudent course of action that weakens rather than strengthens an inference of scienter." Slayton v. Am. Exp. Co., 604 F.3d 758, 777 (2d Cir. 2010) (internal quotation and citation omitted).

### 1.    Alleged Falsity of "100% Egyptian Cotton" Labels

Plaintiffs' allegations concerning the falsity of the "100% Egyptian cotton" labels satisfy the Rule 9(b) standard. As discussed in the Background section above, plaintiffs allege specific characteristics unique to Egyptian cotton, including longer cotton fibers and more porous cotton, and describe how those unique characteristics result in higher-quality cotton. Further, plaintiffs allege defendants misrepresented the Bed Linens as "100 Egyptian Cotton" or "100% Long-Staple Egyptian Cotton."

### 2.    Scienter

Plaintiffs' UCL, CLRA, FAL, and negligent misrepresentation claims do not require plaintiffs to plead the Retailer Defendants' fraudulent intent. See Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 591 (9th Cir. 2012) ("[T]he California laws at issue here"—the UCL, CLRA, and FAL—"have no scienter requirement." (citations omitted)); Dougherty v. Bank of Am., N.A., 177 F. Supp. 3d 1230, 1245 (E.D. Cal. 2016) (stating a plaintiff need not allege a defendant made an intentionally false statement to state claim for negligent misrepresentation). Thus, the Court will not dismiss those claims for failure to allege scienter plausibly.

However, plaintiffs' fraud claims against the Retailer Defendants do fail because plaintiffs do not raise a strong inference of fraudulent intent.[5]  Plaintiffs merely allege Target and BB&B knew they were selling fake Egyptian cotton sheets after they began investigating the Welspun Defendants.  However, the investigations indicate "a prudent course of action," not an intent to perpetrate a fraud.  <u>Slayton v. Am. Exp. Co.</u>, 604 F.3d at 777 (internal quotation and citation omitted).  Plaintiffs alternatively allege Target and BB&B should have been aware of issues with the Welspun Defendants' products before investigating them, yet plaintiffs' allegations are entirely conclusory.

As for Walmart, plaintiffs allege in 2008, a Walmart employee expressed concerns about the Welspun Defendants' products; Walmart investigated the Welspun Defendants; and Walmart "buried the results" of that investigation.  (CSAC ¶ 48).  But plaintiffs plead no specific facts supporting the conclusory allegation that Walmart buried the results of its investigation, and Walmart's investigation of the Welspun Defendants indicates prudence.

Plaintiffs also allege in 2015, the Cotton Egypt Association warned Walmart, "the levels of fraudulent merchandise on offer as Egyptian cotton had reached a crisis point."  (CSAC ¶ 49).  But plaintiffs' allegation is far too general to generate a strong inference of intent to defraud—in particular, plaintiffs do not allege the Cotton Egypt Association warned Walmart specifically about the Bed Linens or about the Welspun Defendants.

---

[5]     The Retailer Defendants argue plaintiffs' claims against BB&B should be dismissed for lack of standing because no named plaintiff purchased Bed Linens from BB&B after BB&B allegedly learned of labeling issues with the Bed Linens in August 2015.  The Court is not persuaded that BB&B was required to know of labeling issues with the Bed Linens at the time of a plaintiff's purchase for the plaintiff to have standing to pursue a fraud claim.  Nevertheless, as discussed <u>infra</u>, plaintiffs' fraud claims against BB&B fail for other reasons.

Accordingly, plaintiffs' claims under the UCL, CLRA, and FAL, and for negligent misrepresentation under California law, may proceed.  Plaintiffs' fraud claims against the Retailer Defendants under New York and California law, however, are dismissed.

E.     MMWA

Defendants proffer several arguments why the Court should dismiss plaintiffs' claims under the MMWA.  Two of those arguments contest the Court's subject matter jurisdiction over plaintiffs' MMWA claims.  Although neither argument is convincing, the Court must address those arguments first.

Defendants argue the Court lacks subject matter jurisdiction because plaintiffs fail to name at least 100 plaintiffs.  However, "where, as here, the jurisdictional prerequisites of [the Class Action Fairness Act] are satisfied, [the Court] may exercise subject-matter jurisdiction over a claim under the MMWA without regard for whether the jurisdictional prerequisites of that statute are also met."  Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 295 (S.D.N.Y. 2015).

Defendants also argue the federal Textile Act preempts the MMWA pursuant to 15 U.S.C. § 2311(d), which states the MMWA is "inapplicable to any written warranty the making or content of which is governed by Federal law."  But because "the representations appearing on the labels of the Class Products do not constitute a written warranty under the MMWA, section 2311(d)"—upon which defendants' argument relies—"is wholly inapplicable."  Forcellati v. Hyland's, Inc., 2015 WL 9685557, at *6 (C.D. Cal. Jan. 12, 2015); see also 15 U.S.C. § 2301(6) (defining "written warranty" for purposes of the MMWA).

Nevertheless, the California plaintiffs fail to state a claim under the MMWA.  Although the MMWA is a federal statute, liability under the MMWA is based on state warranty laws.

See Ebin v. Kangadis Food Inc., 2013 WL 3936193, at *3 n.2 (S.D.N.Y. July 26, 2013) (noting

the MMWA "incorporates and federalizes state-law breach of warranty claims, including state-

law standards for liability and damages").  Thus, a plaintiff's claim under the MMWA "stand[s]

or fall[s]" with the plaintiff's state law claims.  See Brady v. Basic Research, L.L.C., 101

F. Supp. 3d 217, 234 (E.D.N.Y. 2015).

Plaintiffs' claims under the MMWA are based entirely on the California plaintiffs' claims

for breach of the implied warranty of merchantability.  The Court has dismissed those claims.

Therefore, plaintiffs' MMWA claims are likewise dismissed.

V.     Motion to Strike Class Allegations

The Retailer Defendants move to strike the CSAC's class allegations, arguing (i) a class

action is not a superior method of resolving the dispute and (ii) common issues do not

predominate.  The Retailer Defendants also argue plaintiffs' claims for express warranty under

New York law, negligent misrepresentation, and fraud require individualized proof to assess

reliance, and therefore the Court should strike all class allegations pertaining to plaintiffs'

proposed subclasses with respect to those claims.

Because the motion raises issues "that would be decided in connection with determining

the appropriateness of class certification," the motion must be denied as premature, without

prejudice to renewal at the class certification stage."  Kassman v. KPMG LLP, 925 F. Supp. 2d

at 464–65.

VI.    Rule 8

The Welspun Defendants argue the CSAC fails to meet the basic notice pleading

requirements of Rule 8(a)(2) because it does not distinguish between WIL and WUSA.

The Court disagrees.

"The key to Rule 8(a)'s requirements is whether adequate notice is given."  <u>Wynder v.</u> <u>McMahon</u>, 360 F.3d at 79 (internal citation omitted).  Adequate notice is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial."  <u>Id.</u> (quoting <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86 (2d Cir. 1995)).

Rule 8 "does not necessarily require . . . that the complaint separate out claims against individual defendants."  <u>Wynder v. McMahon</u>, 360 F.3d at 80.  Nevertheless, courts have dismissed complaints that fail to "distinguish <u>at all</u> between any of the Defendants."  <u>Angermeir</u> <u>v. Cohen</u>, 14 F. Supp. 3d 134, 143 (S.D.N.Y. 2014) (collecting cases).  However, in <u>Loreley</u>, which addressed Rule 9(b)'s higher pleading standard for fraud claims, the Second Circuit held the plaintiffs' references to three corporate entities collectively as "Wachovia," who allegedly acted together to structure and offer securities at issue in the case, sufficed to inform the defendants of the nature of their alleged participation in the fraud.  797 F.3d at 171–72.

This is not a case in which the complaint fails to distinguish at all between WIL and WUSA.  On the contrary, plaintiffs allege WUSA acted as WIL's "sales arm" in North America, and that WUSA's work included "distributing textile products and working directly with United States retailers on textile product labeling and marketing."  (CSAC ¶ 11).  Moreover, the very nature of plaintiffs' allegations is that WUSA acted as WIL's agent in selling the Bed Linens.  Thus, the Court is "hard-pressed" to see how plaintiffs could have done anything but refer to WIL and WUSA collectively.  <u>Loreley</u>, 797 F.3d at 172.

Accordingly, the CSAC satisfies Rule 8.

35

VII.   <u>Sanctions</u>

The Court will not sanction plaintiffs or plaintiffs' counsel under Rule 11, 28 U.S.C.

§ 1927, or the Court's inherent equitable powers for failure to amend the CAC in response to

defendants' pre-motion letter, which made apparent obvious defects in plaintiffs' pleading. The

Court sympathizes with Judge Sullivan's frustration for plaintiffs' needless delay and

complication of this case. Nevertheless, the Court is not convinced plaintiffs or their counsel

acted in bad faith or for an improper purpose.

Accordingly, the Court will not award sanctions at this time.

VIII.   <u>Leave to Amend</u>

The Court also declines to grant plaintiffs leave to file a consolidated third amended class

action complaint to cure deficiencies identified in this Opinion and Order.

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when

justice so requires." However, leave to amend may "properly be denied for: 'undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, futility of amendment, etc.'" <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 191

(2d Cir. 2008) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)). A plaintiff's "failure to fix

deficiencies in the previous pleading, after being provided notice of them, is alone sufficient

ground to deny leave to amend." <u>Jeanty v. Newburgh Beacon Bus Corp.</u>, 2018 WL 6047832, at

*12 (S.D.N.Y. Nov. 19, 2018) (collecting cases), <u>appeal</u> <u>docketed</u>, No. 18-3677 (2d Cir. Dec. 10,

2018). Moreover, the Court need not grant a plaintiff leave to amend if she has not suggested

she is in possession of facts that would cure deficiencies identified by the Court. <u>See</u> <u>id.</u>

(collecting cases).

This is plaintiffs' consolidated second amended class action complaint.  Indeed, both the Welspun Defendants and the Retailer Defendants previously filed motions to dismiss, which were fully briefed before the Court granted plaintiffs leave to file the CSAC.  The CSAC does not cure the deficiencies with the dismissed claims, deficiencies that were specifically identified in those earlier-filed motions.  This alone is sufficient to deny leave to amend.  Further, plaintiffs have not suggested they possess facts that would cure the deficiencies identified in this Opinion and Order.

In addition, having carefully reviewed the CSAC, the Court does not find any allegations that suggest plaintiffs have valid claims that they have merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).  Thus, because the problems with the dismissed claims in plaintiffs' CSAC are substantive, and supplementary or improved pleading would not cure those claims' deficiencies, the Court finds that repleading again would be futile.

Finally, this case is not at all like Loreley, 797 F.3d 160, upon which plaintiffs rely in requesting leave to amend.  In that case, the district court held a pre-motion conference and "presented Plaintiffs with a Hobson's choice:  agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead." Id. at 190.  Plaintiffs declined to amend, and the court dismissed the complaint in its entirety and with prejudice. Id. at 169.  The Second Circuit held "the procedure by which the district court denied leave to amend was improper." Id. at 190. The Second Circuit reasoned, "Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." Id.  Nevertheless, the Second Circuit left "unaltered the grounds on which

denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility." Id. at 190.

Here, several of plaintiffs' claims survive defendants' motions to dismiss; plaintiffs have had the benefit of two full rounds of briefing on defendants' motions to dismiss; plaintiffs amended their CAC after the first full round of briefing; and, as discussed above, the problems with the dismissed claims are substantive and plaintiffs have not suggested they possess facts that would cure the deficiencies identified herein. Thus, if Loreley left open any possibility for a district court to deny leave to amend without having first issued what amounts to an advisory opinion, this case unquestionably presents those circumstances.

Accordingly, the Court declines to grant plaintiffs leave to file a consolidated third amended class action complaint.

## CONCLUSION

The Welspun Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Retailer Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

The Retailer Defendants' motion to strike is DENIED.

Plaintiffs' request for leave to amend is DENIED.

The Welspun Defendants' and Target's accountings for sanctions are DENIED.

The remaining claims are as follows:

- The California plaintiffs' claims, individually and on behalf of the proposed California subclass, against WUSA and the Retailer Defendants for violation of the CLRA, UCL, and FAL;

- The California plaintiffs' claims, individually and on behalf of the proposed nationwide class, for breach of express warranty and unjust enrichment against WUSA and the Retailer Defendants;

- The California plaintiffs' claims, individually and on behalf of the proposed nationwide class, for negligent misrepresentation against WUSA and the Retailer Defendants;

- The California plaintiffs' claims, individually and on behalf of the proposed nationwide class, for fraud against WUSA;

- The New York plaintiffs' claims, individually and on behalf of the proposed nationwide class, for fraud against WIL and WUSA; and

- The New York plaintiffs' claims, individually and on behalf of the proposed New York subclass, for violation of NYGBL §§ 349 & 350 against all defendants.

By June 3, 2019, defendants shall file answers to the surviving claims.

By May 31, 2019, the parties shall submit a joint letter, no more than three pages in length, regarding the status of discovery (and to the extent necessary, a proposed schedule for remaining discovery), settlement discussions, and, if applicable, a proposed briefing schedule for a motion for class certification.

In addition, the parties are directed to appear for an in-person status conference on June 7, 2019, at 9:30 a.m., at the United States Courthouse in White Plains, Courtroom 620.

The Clerk is instructed to terminate the motions.  (Docs. ##182, 185).

Dated: May 20, 2019
       White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge

39